[No. 53022–0.   En Banc.   November 25, 1987.]

KENNETH E. DENNIS, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Petitioner.*

*Kenneth O. Eikenberry, Attorney General,* and *Robert G. Swenson* and *Thomas R. Chapman, Assistants,* for petitioner.

*Hennings, Maltman, Weber & Reed,* by *Douglass A. North,* and *Aaby, Putnam, Albo & Causey,* by *Joseph A. Albo,* for respondent.

*Craig A. Staples* on behalf of Washington Self-Insurers Association, amicus curiae for petitioner.

*Michael J. Welch* on behalf of Washington State Labor Council, amicus curiae for respondent.

*Albert R. Johnson, Jr.,* on behalf of Joint Council of Teamsters and *Bryan P. Harnetiaux, Michael J. Pontarolo,* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae.

BRACHTENBACH, J.—The Department of Labor and Industries seeks reversal of a Court of Appeals decision awarding workers' compensation to respondent Kenneth Dennis for disability resulting from an occupational disease. *Dennis v. Department of Labor & Indus.,* 44 Wn. App. 423, 722 P.2d 1317 (1986). We affirm.

Dennis, a sheet metal worker, quit working due to dis-

abling osteoarthritis in his wrists. He filed a disability claim with the Department, which denied the claim on the basis that Dennis had not sustained an industrial injury and that his disease was not an occupational disease. Dennis appealed the decision to the Board of Industrial Insurance Appeals. He abandoned his injury claim and pursued only his occupational disease claim. Following a hearing, the hearing examiner prepared a proposed order and decision reversing the Department's rejection of the claim and granting Dennis' claim for disability resulting from an occupational disease. The Department sought review by the full Board, which affirmed the Department's rejection of the claim. On Dennis' appeal to Superior Court, summary judgment was granted in favor of the Department. The Court of Appeals reversed and remanded for trial. We granted the Department's petition for review.

Dennis was a sheet metal worker for 38 years. His job required him to use 9– to 18–inch bladed tin snips for 4 to 5 hours per day to cut metal. Since at least 1970 Dennis was affected by generalized, diffuse, and multi–joint osteoarthritis. At the hearing, Dennis' attending physician presented uncontroverted medical testimony that the work aggravated the osteoarthritis in Dennis' wrists and that the osteoarthritis became symptomatic and disabling as a result of repetitive metal snipping. Dennis and his doctor were the only witnesses to testify. There is no dispute that Dennis is disabled due to the condition of his wrists.

In *Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 590–91, 158 P. 256 (1916), this court explained the genesis of this state's workers' compensation scheme: The Industrial Insurance Act (Act), RCW Title 51, was the result of a compromise between employers and workers. In exchange for limited liability the employer would pay on some claims for which there had been no common law liability. The worker gave up common law remedies and would receive less, in most cases, than he would have received had he won in court in a civil action, and in exchange would be sure of receiving that lesser amount without having to fight for it.

Industrial injuries were viewed as a cost of production.

RCW 51.04.010 embodies these principles, and declares, among other things, that "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided [by the Act] regardless of questions of fault and to the exclusion of every other remedy". To this end, the guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker. RCW 51.12.010; *Sacred Heart Med. Ctr. v. Carrado,* 92 Wn.2d 631, 635, 600 P.2d 1015 (1979); *Lightle v. Department of Labor & Indus.,* 68 Wn.2d 507, 510, 413 P.2d 814 (1966); *Wilber v. Department of Labor & Indus.,* 61 Wn.2d 439, 446, 378 P.2d 684 (1963); *State ex rel. Crabb v. Olinger,* 196 Wash. 308, 311, 82 P.2d 865 (1938); *Gaines v. Department of Labor & Indus.,* 1 Wn. App. 547, 552, 463 P.2d 269 (1969).

With this principle in mind, we turn to the issues raised by this case involving occupational disease coverage. Disability resulting from occupational disease coverage is compensable pursuant to RCW 51.32.180, which provides that a worker suffering disability from an occupational disease shall receive benefits under the Act:

> Every worker who suffers disability from an occupational disease in the course of employment under the mandatory or elective adoption provisions of this title, or his or her family and dependents in case of death of the worker from such disease or infection, shall receive the same compensation benefits and medical, surgical and hospital care and treatment as would be paid and provided for a worker injured or killed in employment under this title . . .

RCW 51.32.180. Occupational disease is defined in RCW 51.08.140 as "such disease or infection as arises naturally and proximately out of employment".

Focus upon these statutes alone, narrowly construed, would seem to result in exclusion from coverage of the con-

dition here involved because the underlying disease did not arise from employment. The Department urges this construction, and argues that, as a threshold determination, the claimant's underlying disease must have been contracted as the result of employment conditions.

Such a construction would, however, be contrary to the purpose of the Act. By expressly providing that workers suffering disability from occupational disease be accorded equal treatment with workers suffering a traumatic injury during the course of employment, RCW 51.32.180 effectuates the Act's purpose of providing sure and certain relief to *all* workers injured in their employment. The worker whose work acts upon a preexisting disease to produce disability where none existed before is just as injured in his or her employment as is the worker who contracts a disease as a result of employment conditions.

Moreover, we have long recognized that benefits are not limited to those workers previously in perfect health. *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 44, 395 P.2d 633 (1964); *Kallos v. Department of Labor & Indus.*, 46 Wn.2d 26, 30, 278 P.2d 393 (1955); *Jacobson v. Department of Labor & Indus.*, 37 Wn.2d 444, 448, 224 P.2d 338 (1950); *Miller v. Department of Labor & Indus.*, 200 Wash. 674, 682–83, 94 P.2d 764 (1939).

> It is a fundamental principle which most, if not all, courts accept, that, if the accident or injury complained of is the proximate cause of the disability for which compensation is sought, the previous physical condition of the workman is immaterial and recovery may be had for the full disability independent of any preexisting or congenital weakness; the theory upon which that principle is founded is that the workman's prior physical condition is not deemed the cause of the injury, but merely a condition upon which the real cause operated.

*Miller,* at 682–83. The worker is to be taken as he or she is, with all his or her preexisting frailties and bodily infirmities. *Wendt v. Department of Labor & Indus.*, 18 Wn. App. 674, 682–83, 571 P.2d 229 (1977).

Thus, we have repeatedly recognized in a long line of

cases that where a sudden injury "lights up" a quiescent infirmity or weakened physical condition occasioned by disease, the resulting disability is attributable to the injury and compensation is awardable. *See, e.g., Harbor Plywood Corp. v. Department of Labor & Indus.*, 48 Wn.2d 553, 295 P.2d 310 (1956); *Ray v. Department of Labor & Indus.*, 177 Wash. 687, 33 P.2d 375 (1934) (preexisting dormant arthritic condition lighted up and made active by injury). In *Harbor Plywood Corp.*, this court held compensation was due where the evidence established that an industrial injury aggravated a preexisting nonwork–related cancer, causing acceleration of the employee's death due to cancer. It would be anomalous were we to hold on the one hand that compensation is due under the Act where a sudden injury results in aggravation of a nonwork–related disease, but is not due where disability results from the progressive effect of work activity on a nonwork–related disease. In each case disability results from employment conditions; in each instance the worker may be equally affected, in one case swiftly, in the other slowly.

The historical development of occupational disease coverage in Washington further supports our conclusion that disability resulting from work–related aggravation of a nonwork–related disease may be compensable as an occupational disease. Washington's Industrial Insurance Act was enacted in 1911. There was then no coverage for disability resulting from occupational disease; only injuries sustained performing certain extrahazardous work were compensable. Laws of 1911, ch. 74, § 2, p. 346. Indeed, contraction of disease was expressly excluded from the Act. Laws of 1911, ch. 74, § 3, p. 346, 349. This exclusion of occupational diseases paralleled that of statutes in other states. Then, in the 1920's and 1930's a number of states developed schedules of covered diseases. 1B A. Larson, *Workmen's Compensation* § 41.20 (1987); *see also* Solomons, *Workers' Compensation for Occupational Disease Victims: Federal Standards and Threshold Problems*, 41 Alb. L. Rev. 195, 197–98 (1977). In concert with this

national trend toward expanded workers' compensation coverage, in 1937 the Legislature passed the first law providing compensation for disability resulting from certain enumerated diseases. Laws of 1937, ch. 212, § 1, p. 1031. Included in coverage were specific conditions resulting from repetitive work activities:

> (18) Disability arising from blisters or abrasions. Any process involving continuous friction, rubbing or vibration causing blisters or abrasions;
> (19) Disability arising from bursitis or synovitis. Any process involving continuous rubbing, pressure or vibration of the parts affected;

Laws of 1937, ch. 212, § 1, p. 1033. By including these conditions, the Legislature early recognized that progressive physical deterioration due to work conditions could in time constitute a compensable disability.

A 1939 amendment broadened coverage by providing for diseases enumerated in the Act where a worker was exposed to disease–causing conditions in employment in another state, provided that the disease was quiescent and nondisabling for 1 year prior to injurious exposure while in the course of employment in Washington. Laws of 1939, ch. 135, § 1, p. 382.

In 1941, the Legislature again broadened coverage by eliminating the list of enumerated compensable diseases, and enacting the present definition of occupational disease (as one which "arises naturally and proximately out of" employment), although at that time compensation was awardable only in cases involving extrahazardous employment. Laws of 1941, ch. 235, § 1, p. 772. The Legislature also deleted the strict requirements for coverage of workers with prior exposure in another state. Laws of 1941, ch. 235, § 1, p. 772. Then, in 1959, the Legislature provided coverage for disability resulting from occupational disease in all employment, thus eliminating the "extrahazardous employment" requirement. Laws of 1959, ch. 308, § 4, p. 1470.

From "no coverage" to the present broad definition of occupational disease, the Legislature has repeatedly and

consistently provided expanded coverage for disability resulting from occupational disease. Indeed, Washington presently has a broader statutory definition of occupational disease than do many states. *Compare* RCW 51.08.140 *with, e.g.,* Neb. Rev. Stat. § 48–151(3) (1984) (including only diseases which are "due to causes and conditions which are characteristic of and peculiar to a particular" occupation; excluding "all ordinary diseases of life to which the general public are exposed") *and* Okla. Stat. Ann. tit. 85, § 3(10) (West Supp. 1987) (occupational disease must be "due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment"); *see generally* Solomons, 41 Alb. L. Rev., at 198–200.

In summary, the purpose of the Industrial Insurance Act, the rule of liberal construction of provisions of the Act in favor of workers, analogous case law involving industrial injuries acting on preexisting nonwork–related disease, the history of occupational disease coverage in Washington, and our broad definition of occupational disease all support our holding that compensation may be due where disability results from work–related aggravation of a preexisting nonwork–related disease.

We are mindful of the caution that the Legislature did "not [intend] to provide workmen with life, health, or accident insurance at the expense of the industry in which they are employed." *Favor v. Department of Labor & Indus.,* 53 Wn.2d 698, 703, 336 P.2d 382 (1959). However, our decision has at its heart the requirement that the worker's disabled condition must be work related, and thus our decision comports with the Industrial Insurance Act. *See* RCW 51.04-.010 (governing the remedy of workers "for injuries received in employment"); RCW 51.12.010 (declaring the policy of liberal construction "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment"); RCW 51.32.180 and RCW 51.08.140 (requiring that compensable disability from occupational disease must arise

out of employment).

Our decision that the underlying disease need not be work related accords with decisions recognized in 1 A. Larson, *Workmen's Compensation* § 12.21, at 3–336 (1985) (reciting the basic aggravation rule: "[p]reexisting disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought" (footnote omitted) (*quoted in Harbor Plywood Corp. v. Department of Labor & Indus.*, 48 Wn.2d 553, 556, 295 P.2d 310 (1956))) and 1B A. Larson, *Workmen's Compensation* § 41.63, at 7–454 (1987) (most courts hold that when distinctive employment hazards act upon preexisting weakness, disease, or susceptibility to produce a disabling disease, the result is an occupational disease).

In addition to maintaining that the underlying disease must be employment caused, a proposition we reject here, the Department also suggests that where a preexisting disease condition was symptomatic, compensation is not awardable for disability resulting from aggravation of that disease. The Department relies upon *Kallos v. Department of Labor & Indus.*, 46 Wn.2d 26, 278 P.2d 393 (1955) and *Snyder v. Department of Labor & Indus.*, 40 Wn. App. 566, 699 P.2d 256 (1985). In each of these cases a worker contracted an occupational disease while employed in another state. The condition was asymptomatic when the worker began working in Washington, and the preexisting disease was then aggravated by in–state employment which resulted in disability. Compensation was held due in each case. Dennis maintains, on the other hand, that the symptomatic–asymptomatic question is only relevant where, as in *Kallos* and *Snyder,* a worker is exposed to a disease in another state and then comes to Washington. Dennis reasons that if the worker's condition were previously symptomatic, then the burden of compensation should fall on the other state's workers' compensation fund.

We are not convinced that *Kallos* and *Snyder* provide a dispositive answer. As noted, we have held that where an injury lights up a quiescent or latent preexisting disease or weakened condition, resulting disability is attributable to the injury. *See, e.g., Harbor Plywood Corp. v. Department of Labor & Indus.*, 48 Wn.2d 553, 295 P.2d 310 (1956). We have also recognized, however, that a different rule applies where a worker is already permanently partially disabled within the meaning of the Act; in such a case RCW 51.32-.080(3) applies. That section requires segregation of the preexisting disability, from whatever cause, and limits the award for any disability resulting from a later injury. *Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 532–33, 627 P.2d 104 (1981). *See also* RCW 51.32.100 (setting forth segregation rule where preexisting disease delays or prevents recovery); *Allen v. Department of Labor & Indus.*, 48 Wn.2d 317, 293 P.2d 391 (1956) (in which segregation rule applied). Where a claimant establishes a disease–based disability arising naturally and proximately out of employment, we are inclined to view the "symptomatic–asymptomatic" issue in terms of whether segregation rules apply, rather than to perceive a bar to any award if a preexisting disease was symptomatic prior to work–related aggravation of that disease.

In any event, we need not resolve the "symptomatic–asymptomatic" issue in this case because the uncontroverted medical testimony established that the osteoarthritis in Dennis' wrists became symptomatic and disabling as a result of repetitive tin snipping. While the osteoarthritis manifested itself elsewhere in Dennis' body, we are here concerned only with the disabled condition of his wrists and the medical testimony respecting that condition.

Having determined that work–related aggravation of a nonwork–related disease may result in compensable disability, we turn to the meaning of the requirement that an occupational disease "[arise] naturally and proximately out of employment . . ." RCW 51.08.140.

Nearly forty years ago this court addressed the require-

ment that an occupational disease arise "proximately" out of employment:

> The legislature is presumed to have been familiar with the meaning of "proximate cause" as used by the courts, and that being so, when they defined as an occupational disease those diseases or infections as arise naturally and *proximately* out of extrahazardous employment, it would follow that they meant that the condition of the extrahazardous employment must be the proximate cause of the disease for which claim for compensation is made, and that the cause must be proximate in the sense that there existed no intervening independent and sufficient cause for the disease, so that the disease[1] would not have been contracted but for the condition existing in the extrahazardous employment.

*Simpson Logging Co. v. Department of Labor & Indus.*, 32 Wn.2d 472, 479, 202 P.2d 448 (1949).

The causal connection between a claimant's physical condition and his or her employment must be established by competent medical testimony which shows that the disease is probably, as opposed to possibly, caused by the employment. *Ehman v. Department of Labor & Indus.*, 33 Wn.2d 584, 206 P.2d 787 (1949); *Seattle–Tacoma Shipbuilding Co. v. Department of Labor & Indus.*, 26 Wn.2d 233, 241–42, 173 P.2d 786 (1946). Here, the Board found that the continued use of tin snips 4 or 5 hours per workday exacerbated Dennis' preexisting osteoarthritis in his wrists, which became disabling. Finding of fact 3; Clerk's Papers, at 15. This finding, not challenged by the Department, is supported by the medical testimony that, more probably than not, the osteoarthritis in Dennis' wrists was made symptomatic and disabling by 38 years of repetitive tin snipping. There is sufficient medical evidence in the record from which a trier of fact could infer the required causal connection. *See Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981); *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 600 P.2d 1015

---

[1]As we have explained here, the term "occupational disease" may include disability due to aggravation of a nonwork–related disease.

(1979).

While the "proximately" requirement is not seriously in dispute, the parties do dispute whether Dennis' disabling wrist condition arose "naturally" out of employment. The Board upheld the rejection of Dennis' claim because it found that the development and exacerbation of the osteoarthritis in his wrists was not peculiar to, nor inherent in, his occupation, nor was he exposed to a greater risk of developing or aggravating osteoarthritis than would occur in other types of employment or nonemployment life. Finding of fact 4; Clerk's Papers, at 15–16. The Board therefore concluded that Dennis' disabling wrist condition did not arise "naturally" from his employment.

The Board's formulation of the "naturally" requirement is from the decision by Division Two of the Court of Appeals in *Department of Labor & Indus. v. Kinville*, 35 Wn. App. 80, 664 P.2d 1311 (1983). There the court held that to satisfy the "naturally" requirement of RCW 51.08-.140, "the worker has the burden of establishing that the conditions producing his disease are peculiar to, or inherent in, his particular occupation." (Footnote omitted.) *Kinville*, at 87. The court also said that RCW 51.08.140 "requires a showing by the claimant that the job requirements of his particular occupation exposed him to a greater risk of contracting the disease than would other types of employment or nonemployment life." (Footnote omitted.) *Kinville*, at 88.

█ █ The Board's adherence to the analysis in *Kinville* is understandable because that decision was, at the time of the Board's decision, the only published Washington opinion defining "naturally" as used in RCW 51.08.140. We do not, however, agree with the "peculiar to, or inherent in" construction used in *Kinville*. In 1941, the Legislature had before it a definition of "occupational disease" as one "which is due to causes and conditions which are present in, characteristic of, and peculiar to a particular extrahazardous occupation." Senate Bill 190, introduced February 6, 1941. This language was changed in committee and, when

enacted, the present definition ("occupational disease" as one which "arises naturally and proximately out of" employment) was instead adopted. Laws of 1941, ch. 235, § 1, p. 772.

Moreover, in *Simpson Logging Co.* this court rejected the Department's argument that compensation was only awardable if the disease was peculiar to the claimant's occupation and all workers in a particular occupation were exposed to the harmful conditions. Thus, both this court and the Legislature have declined to employ a "peculiar to" test.[2] To the extent that the decision in *Kinville* suggests that a worker must show that the employment conditions causing his disease–based disability are "peculiar to" his employment, it is incorrect.

Division One of the Court of Appeals also disagreed with the decision in *Kinville,* and held that "naturally" means that a worker must demonstrate a "logical relationship between the disease–based disability and the work . . ." *Dennis v. Department of Labor & Indus.,* 44 Wn. App. 423, 436, 722 P.2d 1317 (1986). This definition is also incorrect. There is no basis for this formulation; further, we perceive that this construction of the term "naturally" provides little guidance to a worker seeking to establish a compensable disability resulting from occupational disease.

In interpreting the "naturally" language of RCW 51.08-.140, we begin with the principle that the court is required, whenever possible, to give effect to every word in a statute. *Hanson v. Tacoma,* 105 Wn.2d 864, 871, 719 P.2d 104 (1986). No word is deemed inoperative or superfluous unless it is the result of an obvious mistake or error. *Hanson,* at 871. Therefore, the term "naturally" must be given effect.

As a general rule, where a term is not defined in the

---

[2]The court in *Kinville* believed, however, that language in *Favor v. Department of Labor & Indus.,* 53 Wn.2d 698, 336 P.2d 382 (1959) overruled the decision in *Simpson Logging Co.,* rejecting the "peculiar to" formulation. The language in *Favor* relied upon by Division Two is dicta, and is not inconsistent with *Simpson Logging Co.* in any event.

statute, the term must be accorded its plain and ordinary meaning unless a contrary intent appears. *In re Estate of Little,* 106 Wn.2d 269, 283, 721 P.2d 950 (1986); *Island Cy. v. Dillingham Dev. Co.,* 99 Wn.2d 215, 224, 662 P.2d 32 (1983). "Naturally" is defined as "innately," "as a matter of course," *Webster's New Twentieth Century Dictionary* 1197 (2d ed. 1979); "as a natural result or consequence", "as might be expected from the circumstances", *Webster's Third New International Dictionary* 1507 (1981).

"Naturally" is, of course, inextricably bound to the statutory requirement that the occupational disease, or disability due to work–related aggravation of a nonwork–related disease, "arise out of employment." The "arising out of employment" language is found in a number of states' statutes, and is interpreted in a number of ways. *See generally* 1 A. Larson, *Workmen's Compensation* § 6.00–.60 (1985). For example, the "peculiar to" test, which we have rejected, has been used. *See* 1 A. Larson § 6.20, at 3–4. Another interpretation, which Professor Larson characterizes as the prevalent test today, is the "increased–risk test" which is distinguished from the "peculiar–risk test" "in that the distinctiveness of the employment risk can be contributed by the increased *quantity* of a risk that is *qualitatively* not peculiar to the employment." 1 A. Larson § 6.30, at 3–5. The "arising out of employment" requirement in most state statutes applies to all claims for workers' compensation. Washington is one of a few states which do not have the "arising out of employment" requirement in their injury statutes. 1 A. Larson § 6.10, at 3–2. Instead, our statutory scheme in general requires that the injury occurred while the worker was within the "course of employment" when injured. RCW 51.32.010. Thus, under our Act an *injury* need not "arise out of employment" to be compensable. *Tilly v. Department of Labor & Indus.,* 52 Wn.2d 148, 155, 324 P.2d 432 (1958). *But see MacKay v. Department of Labor & Indus.,* 181 Wash. 702, 704–05, 44 P.2d 793 (1935) (discussing an injury as "arising out of employment" when there is a causal connection between the conditions under

which the job is required to be performed and the resulting injury; also discussing injury in the "course of employment").

RCW 51.32.180, which provides equal benefits to those with a compensable disability from occupational disease as to those suffering an industrial injury, also uses the language of RCW 51.32.010: "[e]very worker who suffers disability from an occupational disease in the *course of employment* . . ." (Italics ours.) RCW 51.32.180.

Only in the context of an occupational disease does our Act expressly require that the disabling condition "arise out of employment." RCW 51.08.140. Therefore, in construing the term "naturally" in its ordinary sense, the meaning of the term must be tied to the "arising out of employment" language. We hold that a worker must establish that his or her occupational disease came about as a matter of course as a natural consequence or incident of distinctive conditions of his or her particular employment. The conditions need not be peculiar to, nor unique to, the worker's particular employment. Moreover, the focus is upon conditions giving rise to the occupational disease, or the disease–based disability resulting from work–related aggravation of a nonwork–related disease, and not upon whether the disease itself is common to that particular employment. The worker, in attempting to satisfy the "naturally" requirement, must show that his or her particular work conditions more probably caused his or her disease or disease–based disability than conditions in everyday life or all employments in general; the disease or disease–based disability must be a natural incident of conditions of that worker's particular employment. Finally, the conditions causing the disease or disease–based disability must be conditions of *employment,* that is, conditions of the worker's particular occupation as opposed to conditions coincidentally occurring in his or her workplace.

Our analysis here does not, in any way, modify the long–standing requirement that a claimant satisfy the "proximately" requirement of RCW 51.08.140. *See Simpson Log-*

*ging Co. v. Department of Labor & Indus., supra* at 479. We reiterate that this requirement is not at issue here.

One other aspect of this case requires our attention. As noted above, the court in *Kinville* said that RCW 51.08-.140 "requires a showing by the claimant that the job requirements of his particular occupation exposed him to a greater risk of contracting the disease than would other types of employment or nonemployment life." (Footnote omitted.) *Kinville*, at 88. We have recognized a "greater risk" test, but in a somewhat different context. In *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979), which involved a nurse who contracted hepatitis, we recognized that in contagious disease cases "a number of courts have allowed recoveries where the evidence showed that the claimant's working environment involved an increased risk of contraction of a disease."

The precise issue in *Sacred Heart* was the proof required to show that the disease there was causally connected to employment. The medical testimony showed that there is generally a greater risk of contracting hepatitis in the claimant's employment as a nurse in a hospital than someone in another employment. We held that the Board and the jury were entitled to consider this evidence to infer a causal connection. Our decision in *Sacred Heart* does not *require* each claimant for occupational disease coverage to prove an increased risk of disease–based disability due to conditions of his or her particular employment, but instead eases the burden of proof requirement.

Although the "greater risk test" as stated in *Kinville* is consistent with what Professor Larson concludes is the prevailing interpretation given the "arising out of employment" requirement in other states, for two reasons we are unprepared to require proof of a "greater risk" in the worker's particular employment of contracting an occupational disease or of disability resulting from work–related aggravation of a preexisting disease. First, our Industrial Insurance Act is unique and the opinions of other state

courts are of little assistance in interpreting our Act. *Thompson v. Lewis Cy.*, 92 Wn.2d 204, 208–09, 595 P.2d 541 (1979); *see also Ehman v. Department of Labor & Indus.*, 33 Wn.2d 584, 601–02, 206 P.2d 787 (1949). (This principle also disposes of the extensive arguments by the parties based upon New York cases.) Second, our statute specifically contains the "naturally" requirement, and the "proximately" requirement, but does not contain any language requiring an increased risk in the worker's particular employment. We will not read such a requirement into the statute.

While we disagree with the Court of Appeals interpretation below of the "naturally" requirement, we agree that there is a sufficient factual basis for this case to go to the trier of fact. Dennis' attending physician testified that while all people are susceptible to osteoarthritis, some may be more susceptible than others for a number of reasons not all of which are understood by the medical community. He stated that the disease does not always become symptomatic. He further testified that osteoarthritis is presumably related to wear and tear phenomena. Dennis' physician testified that more probably than not Dennis' repetitive use of tin snips made the osteoarthritis in his wrists symptomatic and disabling. While Dennis had osteoarthritis elsewhere in his body, the evidence showed that it was worse in his wrists. His physician also testified that it was reasonable to assume that the localization of pain in his wrists was related to his occupation. It is reasonable to infer that the use of tin snips 4 to 5 hours per day over 38 years resulted in such wear and tear phenomena as to aggravate the osteoarthritis in Dennis' wrists to the point of disability. The evidence in the record is sufficient to support the inference that Dennis' disabling wrist condition arose naturally and proximately out of his employment. As the Court of Appeals correctly observed, the Department may argue against the inference.

The Court of Appeals is affirmed; the summary judgment is reversed and the case remanded for trial in accord with this decision and the Industrial Insurance Act.

PEARSON, C.J., UTTER, DOLLIVER, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.