# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

SCOTT A. CRANE,                                    )        No. 69125-2-I
                                                   )
                         Appellant,                )
                                                   )
            v.                                      )
                                                   )
WASHINGTON STATE DEPARTMENT )
 OF LABOR & INDUSTRIES;                            )
SNOHOMISH COUNTY FIRE                              )
DISTRICT NO. 1,                                    )        UNPUBLISHED OPINION
                                                   )
                         Respondent.               )        FILED: October 7, 2013
_____)

VERELLEN, J. — Under RCW 51.32.185(1), a firefighter is entitled to a

presumption that a respiratory disease is an occupational disease for purposes of the

Industrial Insurance Act, chapter 51.32 RCW. The Department of Labor and Industries

(Department) may rebut this statutory presumption if it demonstrates by a

preponderance of the evidence that the disease does not arise naturally or proximately

out of employment. Here, both the Department's and the employee's experts testified

there was no known cause, occupational or nonoccupational, of Scott Crane's

pulmonary emboli. Under these circumstances, the Department has not met its burden

of persuasion to rebut the statutory presumption. Because there are no genuine issues

of material fact, we reverse the trial court's grant of summary judgment to the

Department and remand for a calculation of Crane's disability benefits.

FACTS

Scott Crane has worked as a full-time active duty firefighter since July 1990. On December 12, 2007, Crane awoke with chest pain. When the pain did not subside, Crane and his wife decided he should go to the emergency room. Doctors at Evergreen Hospital Medical Center diagnosed him with bilateral pulmonary emboli. A pulmonary embolism is a blood clot that obstructs arteries in the lungs. Crane spent two days in the hospital. After returning home, his breathing worsened, and he spent another two weeks in the hospital.

During his stay at the hospital, doctors determined Crane had developed pulmonary infarction, a complication of pulmonary embolism in which the blood clots cause part of the surrounding lung tissue to die. Crane suffered further complications in the form of hemothorax, where his blood vessels bled into the pleural cavity between the chest wall and lung.

Once Crane was discharged from the hospital in late December 2007, he remained home until mid-February 2008. He returned to light duty work in mid-February and to full-time unrestricted duty six months later. Crane has remained at full-time unrestricted duty since June 2008.

Before Crane's diagnosis, he had never experienced any chest pain or shortness of breath. During the physical training and evaluation required by the fire district, the district did not find any conditions or diagnoses that would affect his ability to perform the strenuous work of a firefighter.

Crane filed an application for benefits with the Department on November 9, 2009, alleging he sustained an industrial injury or exposure during the course of his employment with Snohomish County Fire District No. 1.

To support his claim, Crane presented the testimony of Michael Eulberg, M.D., who treated Crane at Evergreen Hospital. Dr. Eulberg is a board-certified pulmonologist and internist. Dr. Eulberg testified that bilateral pulmonary emboli are a type of respiratory disease. Dr. Eulberg explained that factors that predispose patients to blood clots in general are either trauma to a vein, lack of activity, or both. In Crane's case, however, Dr. Eulberg testified that neither factor was present. Dr. Eulberg opined that the diagnosed condition was possibly, although not probably, caused by an industrial injury or exposure. He reached that conclusion because he could not determine a nonoccupational cause of the pulmonary emboli, and there were no lifestyle factors that would have caused pulmonary emboli.

The Department denied the claim for benefits on December 21, 2009, determining Crane's condition was not the result of an industrial injury and was not an occupational disease within the meaning of RCW 51.08.140. Crane appealed the order to the Board of Industrial Insurance Appeals (BIIA), which returned the case for further action. The Department reopened Crane's claim and arranged for Dennis Stumpp, M.D., to conduct an independent medical examination.

Dr. Stumpp is board certified in occupational medicine, although not in pulmonology or hematology. Dr. Stumpp acknowledged that none of the known

causes[1] of pulmonary emboli applied to Crane's case.[2] Dr. Stumpp also noted Crane's good health, lack of pulmonary infections, lack of injuries, and lack of heredity factors that may have caused the pulmonary emboli. Dr. Stumpp therefore testified that he could not determine the origin of Crane's pulmonary emboli. He testified that although he could not point to a specific nonoccupational cause of the pulmonary emboli, there was "no known association [of pulmonary emboli] with occupation of any sort."[3] He found no literature discussing a possible connection between pulmonary emboli and firefighting.

The Department issued an order on June 30, 2010 affirming its original order denying the claim for benefits. Crane appealed to the BIIA.[4] The BIIA found that Crane did not sustain an injury from a sudden traumatic event during his employment as a firefighter. The BIIA determined that Crane suffered pulmonary emboli and pulmonary infarction followed by pneumothorax. While the BIIA found that Crane's pulmonary emboli constituted a respiratory disease, the pulmonary emboli "[were] not proximately caused by his employment as a firefighter," and "did not arise naturally and proximately from the distinctive conditions of his employment" as a firefighter.[5] Therefore, the BIIA

---

[1] According to Dr. Stumpp, the known causes included being bedbound, infections like sepsis, genetic clotting abnormalities, lower extremity injuries and abdominal injuries.

[2] Dr. Michael Milder also consulted on Crane's case. Crane's blood work during hospitalization revealed abnormal levels of protein S, a protein in the blood that inhibits clotting. However, after Crane finished his blood thinner treatment, he tested at normal levels of protein S. Dr. Milder testified that based upon reasonable medical probability, Crane does not have a genetic protein S deficiency. Dr. Stumpp concurred with Dr. Milder's conclusion.

[3] Clerk's Papers at 347.

[4] Crane also appealed the December 21, 2009 order.

[5] Clerk's Papers at 122 (Findings of Fact 6-8).

found there was no "triggering event that occurred in the course of Mr. Crane's employment."[6]

Based on these findings, the BIIA made the following conclusions of law: (1) Crane did not sustain an industrial injury within the meaning of RCW 51.08.100 on December 12, 2007; (2) the presumption of occupational disease provided by RCW 51.32.185 applied to Crane's case, but the Department "effectively rebutted the presumption"; and (3) Crane did not have an occupational disease that arose naturally and proximately from distinctive conditions of his employment within the meaning of RCW 51.08.140.[7] The BIIA affirmed the denial of benefits.

Crane appealed to superior court. The court heard cross motions for summary judgment. Crane argued he was entitled to summary judgment because the Department had not rebutted the statutory presumption of an occupational disease as set forth in RCW 51.32.185. The Department moved for summary judgment, asking the trial court to affirm the BIIA. The court affirmed the BIIA's ruling, and Crane now appeals.

## DISCUSSION

Crane argues the trial court erred in determining that the Department had rebutted the statutory presumption of occupational disease, as set forth in RCW 51.32.185(1). The statute provides, in pertinent part:

> In the case of firefighters . . . who are covered under Title 51 RCW . . . there shall exist a prima facie presumption that . . . [r]espiratory disease . . . [is an] occupational disease[ ] under RCW 51.08.140. This presumption of occupational disease may be rebutted by a preponderance of the

---

[6] Clerk's Papers at 122 (Finding of Fact 4).

[7] Clerk's Papers at 122-123.

5

evidence. Such evidence may include, but is not limited to, use of tobacco products, physical fitness and weight, lifestyle, hereditary factors, and exposure from other employment or nonemployment activities.

RCW 51.08.140 defines "occupational disease" as "such disease or infection as arises naturally and proximately out of employment."

Our review is governed by RCW 51.52.140, which provides that an appeal "shall lie from the judgment of the superior court as in other civil cases."[8] We review a summary judgment order by engaging in the same inquiry as the trial court.[9] Construction of a statute is a question of law reviewed de novo.[10] In determining the meaning of a statute, courts look first to the plain meaning of the language.[11] The guiding principle in construing the Industrial Insurance Act, chapter 51 RCW, is its remedial nature.[12] We must construe it liberally to achieve its purpose of "reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment."[13]

---

[8] The superior court holds a de novo hearing on the issue presented to the BIIA and does not hear any additional evidence. RCW 51.52.115.

[9] Romo v. Dep't of Labor & Indus., 92 Wn. App. 348, 353, 962 P.2d 844 (1998). Summary judgment is appropriate if there is no genuine issue of material fact. Id. at 353-54 (citing CR 56(c)). The court considers all facts and reasonable inferences therefrom in favor of the nonmoving party. Id.

[10] Pasco v. Pub. Emp't Relations Comm'n, 119 Wn.2d 504, 507, 833 P.2d 381 (1992).

[11] Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). The court looks to the text itself and the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Id. If the reading of the statute leads to more than one reasonable interpretation, the statute is ambiguous, and courts resort to statutory interpretation, including legislative history. Christensen v. Ellsworth, 162 Wn.2d 365, 373, 173 P.3d 228 (2007).

[12] Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

[13] RCW 51.12.010; Dennis, 109 Wn.2d at 470.

The parties do not dispute that Crane met his initial burden to show he had a qualifying disease or condition under RCW 51.32.185(1).[14] Crane's medical expert, Dr. Eulberg, testified that Crane's pulmonary emboli were a type of respiratory disease. The Department does not dispute the BIIA's finding that Crane's "undisputed diagnosis of pulmonary embolism qualifies as a respiratory disease within the meaning of RCW 51.32.185(1)."[15] Because Crane established he had a respiratory disease, he was entitled to the presumption of occupational disease.

The burden then shifted[16] to the Department to show by a preponderance of the evidence that although Crane had a respiratory disease, the respiratory disease did not meet the statutory definition of "occupational disease" under RCW 51.08.140.[17] "Occupational disease" means a disease that arises "naturally and proximately out of employment."[18] A disease arises naturally out of employment if it is "a natural consequence or incident of distinctive conditions of his or her the particular employment."[19] A disease is proximately caused by employment conditions when "'there [is] no intervening independent and sufficient cause for the disease, so that the

---

[14] See Raum v. City of Bellevue, 171 Wn. App. 124, 141, 286 P.3d 695 (2012), review denied, 176 Wn.2d 1024 (2013).

[15] Clerk's Papers at 121.

[16] RCW 51.32.185(1).

[17] Raum, 171 Wn. App. at 141 ("If RCW 51.32.185's rebuttable evidentiary presumption applies, that burden shifts to the employer unless and until the employer rebuts the presumption.").

[18] RCW 51.08.140.

[19] Dennis, 109 Wn.2d at 481. Slightly differently stated, a disease arises naturally of employment if the particular work conditions more probably caused her disability than conditions in everyday life or all employments in general. Potter v. Dep't of Labor & Indus., 172 Wn. App. 301, 315, 289 P.3d 727, review denied, 177 Wn.2d 1017 (2012) (citing id.).

7

disease would not have been contracted but for the condition existing in the . . . employment."[20]

Crane contends that to rebut the presumption of occupational disease, the Department had to both (1) identify a nonoccupational cause of his pulmonary emboli, rebutting the "arising naturally" out of employment element; and (2) demonstrate that employment as a firefighter was not a cause of the pulmonary emboli, rebutting the "arising proximately" out of employment element. We reject Crane's suggestion that the Department had to disprove both elements of "occupational disease" to rebut the presumption. He cites no case law to support his position, and his reading of the statute defies logic. RCW 51.32.185(1) relieves firefighters of the initial burden of proof to show both the "natural" and "proximate" elements of "occupational disease," whereas a nonfirefighter would have the burden to establish both. RCW 51.32.185(1) provides no further benefit to a firefighter. If either the "arising naturally" element or the "arising proximately" element do not exist, then, by definition, there is no occupational disease. Accordingly, the Department may rebut the presumption of an occupational disease by showing either of the two necessary elements of occupational disease is lacking.[21] However, the Department did not rebut the presumption in this case because it established only that no known cause was present here, either occupational or nonoccupational.

---

[20] Raum, 171 Wn. App. at 141 (alterations in original) (quoting Simpson Logging Co. v. Dep't of Labor & Indus., 32 Wn.2d 472, 479, 202 P.2d 448 (1949)). Industrial injuries do not have to be the sole proximate cause of a condition. McDonald v. Dep't of Labor & Indus., 104 Wn. App. 617, 624-27, 17 P.3d 1195 (2001).

[21] See Raum, 171 Wn. App. at 144 (explaining that RCW 51.32.185 "does nothing more than create a rebuttable evidentiary presumption" and that it "creates no occupational disease claim different from that defined in RCW 51.08.140.").

Dr. Stumpp testified that Crane did not have lifestyle or hereditary factors that would elevate Crane's risk of pulmonary emboli. Dr. Stumpp testified further that none of the known causes of pulmonary emboli—being bedbound, infections like sepsis, genetic clotting disorders, lower extremity and abdominal injuries—applied to Crane. This testimony is not sufficient to rebut the presumption that Crane's disease arose naturally out of his employment as a firefighter.

Dr. Stumpp testified Crane's pulmonary emboli were not causally related to his duties as a firefighter because he suffered no injury to his legs to cause a clot, and because there was nothing he knew of specific to firefighting that would predispose a person to pulmonary emboli. Although Dr. Stumpp could not determine any cause of the disease, he nevertheless concluded Crane's pulmonary emboli were more probably than not unrelated to firefighting:

> Q. What was your overall assessment of Mr. Crane after completing your examination or record review?
>
> A. I felt that he had history of bilateral pulmonary emboli with infarction, which I feel weren't causally related to or exacerbated by his firefighter duties.[22]
>
> Q. What was it about the circumstances involving Mr. Crane that caused you to conclude that his bilateral pulmonary emboli with infarction was not causally related to his duties as a firefighter?
>
> A. Well, I mean, the big thing is that in the absence of an injury to the legs causing the blood clots that would go to the lungs, pulmonary emboli are not an occupational disease. . . . [T]here's nothing specific to the duties of being a firefighter or any other occupational duties that would predispose a person to emboli as a result of their job. So pulmonary emboli are not an occupational disease.[23]

---

[22] Clerk's Papers at 337.

[23] Clerk's Papers at 339.

Q. So pulmonary emboli have nothing to do with inhalation of any substance into the lungs?

A. That's correct.[24]

Q. Can you tell me where the blood clots that cause the bilateral pulmonary embolism came from on the basis of reasonable medical probability?

A. No. I never discovered any peripherals. I put in my report that they probably arise within the pulmonary vasculature itself, but that's supposition because he didn't have any peripheral ones.

Q. Do you know whether Scott Crane, as a result of exposure to smoke, fumes, or toxic substances in his career from 1989 up until December 2007, ever had damage to the intima lining of any of his vessels in his body?

A. No.[25]

Further, Dr. Stumpp testified that firefighting would not have caused Crane's pulmonary emboli because there was no epidemiological evidence that firefighters had a higher risk of developing emboli than the general population.

Q. What was it about the circumstances involving Mr. Crane that caused you to conclude that his bilateral pulmonary emboli with infarction was not causally related to his duties as a firefighter?

A. . . . Specifically firefighters, if you look at the literature, aren't in any increased risk, epidemiologically, of developing pulmonary embolus than the general population.[26]

Q. Are you aware of any medical studies that would indicate pulmonary emboli have any sort of relationship to firefighter duties?

A. No.

Q. Have you researched those?

---

[24] Clerk's Papers at 342.

[25] Clerk's Papers at 112-13.

[26] Clerk's Papers at 339.

A.   Yes.

Q.   What did you look at?

A.   I just went on a literature research on pulmonary emboli in firefighters, firefighting and pulmonary emboli, firefighting and deep vein thrombosis, so you're looking for epidemiologic studies that show higher incidents of that disease process in firefighters.

Q.   And there are none?

A.   There are none.[27]

Q.   Doctor, are you aware of any medical studies that exposure to smoke, fumes, or toxic substance causes pulmonary emboli?

A.   No.[28]

Dr. Stumpp's general statements that he does not know of a study establishing a relationship between firefighting and pulmonary emboli do not establish that there is a study affirmatively ruling out a relationship between firefighting and pulmonary emboli. The essence of Dr. Stumpp's testimony is that there is no basis for the statutory presumption in this case because no one can point to a study that confirms such a relationship. But such skepticism does not constitute a preponderance of the evidence that no relationship exists between firefighting and Crane's respiratory disease

Crane highlights that Dr. Stumpp's testimony, viewed in a light most favorable to him as the nonmoving party, is simply that Dr. Stumpp had no theory about what caused the disease. Because Dr. Stumpp could not determine what caused the pulmonary emboli, and because there can be more than one proximate cause of a covered condition, the Department's evidence is not sufficient to rebut the presumption that Crane's disease arose naturally and proximately out of his employment as a

---

[27] Clerk's Papers at 343.

[28] Clerk's Papers at 113.

firefighter. To hold otherwise would mean Dr. Stumpp's inability to rule out firefighting as a possible cause of Crane's disease nevertheless demonstrated by a preponderance of the evidence that Crane's disease did not arise naturally or proximately from firefighting.

As acknowledged by the Department at oral argument, there are no genuine issues of material fact. By virtue of the statutory presumption of RCW 51.32.185(1), Crane has established his respiratory condition was an occupational disease. The Department did not rebut the presumption by a preponderance of the evidence. We reverse and remand for calculation of Crane's disability benefits. Crane requests attorney fees under RCW 51.52.130 and RCW 51.32.185(7). Crane is entitled to his attorney fees below and, upon compliance with RAP 18.1(d), on appeal.

WE CONCUR: