# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| **KATHRYN TAYLOR,** | ) | No. 36920-0-III |
| | ) | |
| **Respondent,** | ) | |
| | ) | **ORDER WITHDRAWING** |
| **v.** | ) | **OPINION** |
| | ) | |
| **MAXIM HEALTHCARE SERVICES, INC.,** | ) | |
| | ) | |
| **Appellant.** | ) | |

THE COURT on its own motion finds that the opinion filed on October 6, 2020, should be withdrawn;

THEREFORE, IT IS ORDERED that the opinion filed October 6, 2020, is hereby withdrawn and a new opinion shall be filed this day.

FOR THE COURT:

_____

REBECCA PENNELL
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KATHRYN TAYLOR, | ) | No.  36920-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MAXIM HEALTHCARE SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Maxim Healthcare Services, Inc. (Maxim) appeals the trial court's determination that Kathryn Taylor's November 2011 injury aggravated her preexisting asymptomatic right hip osteoarthritis and was a proximate cause of her much later right hip replacement surgery.

Maxim argues (1) the trial court failed to apply the correct legal standard for an injury being "lit up," (2) the osteoarthritis was naturally progressing and does not qualify under the lighting up doctrine, (3) the trial court erred by placing too much weight on Ms. Taylor's attending physician, and (4) a later injury Ms. Taylor suffered broke the chain of causation.  We conclude the trial court did not err and affirm.

FACTS

Kathryn Taylor is a licensed practical nurse. In 2011, Ms. Taylor was employed by Maxim Healthcare Services. Ms. Taylor's duties while working for Maxim included providing home care for medically fragile children and adults. Prior to November 15, 2011, Ms. Taylor worked for Maxim without restriction for almost 10 years, starting in 2002.

On November 15, 2011, Ms. Taylor was helping one of her clients when she injured herself. Ms. Taylor had just finished helping the client into the shower when she turned and felt "immediate excruciating pain" around her groin from front to back. Administrative Board Record (ABR) at 161. Ms. Taylor had never felt this type of pain before. Ms. Taylor informed her employer about the injury that same day and filed a workers' compensation claim the following day. This claim was accepted by the Department of Labor and Industries on August 5, 2013. Because her symptoms did not improve, on November 19, 2011, Ms. Taylor was treated at the emergency room.

Prior to this injury, Ms. Taylor had been seeing a chiropractor for several years in order to help with various issues. Among these issues were her hands, shoulders, bilateral hips, and her cervical, thoracic, and lumbar spine. Her right hip was one of the issues she saw her chiropractor for.

After her injury, Ms. Taylor underwent physical therapy. In addition, she had medical management and light work duty. Ms. Taylor began experiencing difficulty walking and performing household duties. On May 25, 2012, Ms. Taylor received a magnetic resonance imaging (MRI) of her right hip. The MRI revealed chondromalacia and tearing of the labrum with reactionary bursitis.

Dr. Patrick Lynch was Ms. Taylor's attending physician for her orthopedic surgery. Dr. Lynch first saw Ms. Taylor in April 2013, recommended a hip arthroscopy, and performed the arthroscopy on May 8, 2013. He testified her hip pain was due to arthritis and the labral tear. In his opinion, the November 2011 injury permanently aggravated and accelerated Ms. Taylor's underlying arthritis, which had been asymptomatic until then. Dr. Lynch likened her labral tear injury to "putting gasoline on a fire" and testified that in the case of osteoarthritis, a body normally has the ability to repair itself, but regarding a traumatic injury like the one Ms. Taylor suffered, those reparative processes are diminished. ABR at 452. Dr. Lynch based this opinion on the MRI, Ms. Taylor's description of her medical history, and his arthroscopic and operative findings.

Following the surgery, Dr. Lynch met with Ms. Taylor for three office visits from September 2013 through May 2014. She continued to experience visible discomfort with

a limp and Dr. Lynch advised Ms. Taylor a right hip replacement would ultimately have to be performed.

In 2014, Ms. Taylor went to work for another employer. While working for this employer, she received another injury in October 2014. Dr. Daniel Schmidt was Ms. Taylor's attending physician for the October 30, 2014 injury. After learning about Ms. Taylor's previous injury, Dr. Schmidt supervised a course of conservative treatments. Dr. Schmidt concluded the need for a right total hip replacement was not proximately caused by the October 30, 2014 injury.

Dr. Eric Hofmeister examined Ms. Taylor on June 26, 2015, at the request of Maxim. Dr. Hofmeister concluded that the need for a right total hip replacement was not proximately caused by the October 30, 2014 injury. He further concluded the need for a right total hip replacement was not proximately caused by the November 15, 2011 injury and was the result of natural progression.

Dr. Schmidt disagreed with Dr. Hofmeister. Dr. Schmidt opined that Ms. Taylor's right hip had been permanently aggravated by the November 15, 2011 industrial injury and required surgical replacement. We note that Dr. Lynch performs 7 to 10 hip replacement surgeries per week and 5 to 7 hip arthroscopies per week whereas Dr. Hofmeister's practice emphasizes hand and upper extremity care.

4

At the request of Maxim, Dr. Douglas Porter examined Ms. Taylor on June 16, 2016.  Based on this examination, Dr. Porter concluded the November 15, 2011 injury did not injure Ms. Taylor's right hip in any way but only injured her back.  Dr. Schmidt disagreed with Dr. Porter.

Finally, on September 10, 2016, Maxim asked Dr. Scott Shawen to examine Ms. Taylor.  Dr. Shawen concluded Ms. Taylor had preexisting degenerative joint disease in the right hip that was permanently aggravated or lit up by the November 2011 injury.  Dr. Shawen also testified medical research confirms a patient undergoing hip arthroscopy has a greater chance of needing a hip replacement.  However, he was not able to testify on a more probable than not basis that Ms. Taylor's hip arthroscopy caused her need for a hip replacement.

On March 17, 2017, Dr. Lynch noted Ms. Taylor's right hip had lost nearly all internal rotation.  On March 28, 2017, Dr. Lynch performed a total right hip replacement.

On January 26, 2017, the Department of Labor and Industries issued an "Order and Notice" finding Maxim responsible for permanent aggravation of the degenerative joint disease of the right hip and directing Maxim to authorize and pay for the total right hip replacement surgery.  ABR at 98.  On April 17, 2017, the Department affirmed the

January 26, 2017 order. Maxim timely filed an appeal of the Department's Order and Notice on May 15, 2017.

The Board of Industrial Insurance Appeals (BIIA) granted Maxim's appeal and a hearing was held on June 6, 2018. On September 28, 2018, the Industrial Appeals judge issued a "Proposed Decision and Order" reversing the Department's Order and Notice, finding and concluding the November 2011 industrial injury did not aggravate Ms. Taylor's preexisting degenerative joint disease of the right hip and was not the proximate cause of the need for a right hip replacement surgery. ABR at 64. Ms. Taylor filed a "Petition for Review" with the BIIA. ABR at 22-46. The BIIA denied Ms. Taylor's petition and adopted the Proposed Decision and Order as the "Final Order" of the BIIA. ABR at 4.

Ms. Taylor appealed the BIIA's order to Spokane County Superior Court. A bench trial was held and the trial court issued a written decision, reversing the BIIA and remanding the matter to the Department to issue an order directing Maxim to accept responsibility for the acceleration of Ms. Taylor's preexisting asymptomatic right hip degenerative joint disease and the total right hip replacement surgery. The trial court issued a "Judgment & Order" with "Findings of Fact" and "Conclusions of Law"

consistent with its written decision and awarding attorney costs and fees to Ms. Taylor.

Clerk's Papers at 71-75.

Maxim timely filed this appeal.

ANALYSIS

SUPERIOR COURT AND APPELLATE COURT STANDARDS OF REVIEW

The superior court reviews the BIIA's decision de novo.  RCW 51.52.115.  The

BIIA's factual findings and decision are prima facie correct, and the burden of proof is on

the party attacking the same.  *Id.*  This prima facie presumption controls the superior

court's decision unless it finds, from a fair preponderance of credible evidence, the

BIIA's findings and decision are incorrect.  *City of Bellevue v. Raum*, 171 Wn. App. 124,

139, 286 P.3d 695 (2012).  If the trier of fact, be it judge or jury, reaches a conclusion

different than the BIIA, then the prima facie presumption of correctness has been

overcome.  *Groff v. Dep't of Labor & Indus.*, 65 Wn.2d 35, 43, 395 P.2d 633 (1964).

When reviewing the superior court's decision after an appeal from the BIIA's

decision, this court reviews the record in the light most favorable to the party who

prevailed in superior court.  *Robinson v. Dep't of Labor & Indus.*, 181 Wn. App. 415,

425, 326 P.3d 744 (2014).  "We review only 'whether substantial evidence supports the

trial court's factual findings and then review, de novo, whether the trial court's

7

conclusions of law flow from the findings.'" *Id.* (internal quotation marks omitted)

(quoting *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355

(2009)). Substantial evidence is evidence sufficient to persuade a fair-minded, rational

trier of fact. *Id.*

   1.  "LIGHTING UP" STANDARD

  Maxim contends the trial court skipped the correct legal analysis and simply found

that Ms. Taylor's right hip arthritic condition was asymptomatic before her November

2011 injury. It further argues the trial court ignored compelling evidence that Ms.

Taylor's right hip arthritis was symptomatic before her injury. We disagree with both

arguments.

  "The worker is to be taken as he or she is, with all his or her preexisting frailties

and bodily infirmities." *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 471, 745

P.2d 1295 (1987). "[W]here a sudden injury 'lights up' a quiescent[1] infirmity or

weakened physical condition occasioned by disease, the resulting disability is attributable

to the injury and compensation is awarded." *Id.* at 472.

  We first must examine the trial court's finding that Maxim contends was not

supported by substantial evidence. The trial court found that the November 2011 injury

---

[1] Without symptoms.

Ms. Taylor suffered caused her preexisting right hip osteoarthritis to become symptomatic. Implied, is the finding that Ms. Taylor's right hip arthritis was asymptomatic at the time of her injury.

The trial court based its finding on Dr. Lynch's testimony. He testified Ms. Taylor's right hip arthritis was asymptomatic and, more likely than not, was aggravated by the November 2011 injury. The trial court also found Dr. Lynch to be the most qualified of the medical witnesses on hip pathology.

Maxim urges us to disregard Dr. Lynch's testimony on the basis that Dr. Lynch had not reviewed Ms. Taylor's chiropractic records that showed she received chiropractic care a number of times before November 2011 for hip pain. Its argument would be stronger if the chiropractic records were compelling. But they are not. Maxim showed these chiropractic records to Dr. Schmidt during its cross-examination of him. Dr. Schmidt conceded these records showed Ms. Taylor had hip pain before her November 2011 injury but disagreed that the hip pain described in these records was arthritic hip pain. These chiropractic records did not alter Dr. Schmidt's opinion that Ms. Taylor's right hip arthritis was asymptomatic prior to her November 2011 injury.

Ultimately, the question of whether Ms. Taylor's November 2011 injury caused her hip osteoarthritis to become symptomatic is a question of medically disputed fact.

9

Some, like Dr. Hofmeister, testified the osteoarthritis was symptomatic before the injury. Some, like Dr. Lynch and Dr. Schmidt, testified it was not.

This court will not reweigh the weight given by the trial court to disputed evidence. The trial court's finding that Ms. Taylor's right hip arthritis was asymptomatic before her November 2011 injury is supported by substantial evidence. As a consequence, we conclude the trial court's legal conclusion that the injury lit up a preexisting condition is correct.

2.    OSTEOARTHRITIS IS NATURALLY PROGRESSING

Maxim contends even if Ms. Taylor's condition was asymptomatic, the trial court still erred in concluding the November 2011 injury lit up her condition because it was a naturally progressing condition. We disagree.

An underlying condition need not be work related to be compensable. *Dennis*, 109 Wn.2d at 475. *Dennis* quoted the basic aggravation rule: "'[p]reexisting disease or infirmity of the employee does not disqualify a claim under the arising out of employment requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.'" *Id.* at 475 (internal quotation marks omitted).

Here, Dr. Lynch testified that the 2011 injury accelerated Ms. Taylor's underlying osteoarthritis. Specifically, Dr. Lynch noted that without the injury, osteoarthritis has the potential to recover on its own, but the 2011 labrum tear was like "putting gasoline on a fire." ABR at 452. As noted above, the trial court found Dr. Lynch to be the most credible of the medical experts on the subject of hip pathology. We defer to this credibility finding.

### 3. SPECIAL CONSIDERATION OF DR. LYNCH

Maxim contends the trial court erred by applying the wrong legal standard to the rule requiring special consideration to the attending physician. It argues that Dr. Lynch's testimony was not reliable and the trial court overly relied on it. We disagree.

In Washington, the trier of fact for workers' compensation cases should give special consideration to the opinions of the claimant's attending physician. *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). However, this does not mean the trier of fact must give more weight or credibility to the attending physician's testimony, only that it should give the testimony careful thought. *Id.* at 572.

Maxim argues the trial court erred by giving more weight and credibility to Dr. Lynch, Ms. Taylor's attending physician. We disagree.

While the special consideration rule does not *require* the trial court to give more weight to the attending physician, it does not *prevent* the trial court from giving the attending physician more weight. For instance, here Dr. Lynch had substantially more medical experience with hip pathology than Maxim's central expert witness, Dr. Hofmeister. We conclude the trial court did not misapply the special consideration rule.

4.    PROXIMATE CAUSE

Maxim contends the trial court erred by finding that the November 2011 injury was the proximate cause of Ms. Taylor's right hip surgery.[2] It argues substantial evidence shows that Ms. Taylor's October 2014 injury broke the causation chain between her November 2011 injury and her right hip replacement surgery. We disagree.

We review challenged findings to determine if they are supported by substantial evidence. *Robinson*, 181 Wn. App. at 425. Substantial evidence is evidence sufficient to persuade a fair-minded, rational trier of fact. *Id.* The trial court is not required to believe one set of substantial evidence over another and, if substantial evidence supports two different arguments, it can decide which it finds more persuasive. *Raum*, 171 Wn. App. at 139.

---

[2] This finding is contained in conclusion of law 4. Where a finding is mislabeled a conclusion, we review it as if it was a finding of fact. *State v. Baker*, 136 Wn. App. 878, 883, 151 P.3d 237 (2007).

Here, two medical experts testified that the October 2014 injury was not a cause of the total hip replacement. One of these was Maxim's medical expert, Dr. Hofmeister, who examined Ms. Taylor for the October 2014 injury. The other was Dr. Schmidt, Ms. Taylor's attending physician for the injury. While Maxim cites evidence that might be substantial evidence in support of the idea that there was a break in causation, it is not the review we conduct. We only review whether there was substantial evidence supporting the trial court's challenged finding. We conclude that the two medical experts noted above sufficiently support the trial court's challenged finding.

5.      REASONABLE ATTORNEY FEES AND COSTS[3]

Ms. Taylor requests an award of reasonable attorney fees and costs for services rendered before the Spokane County Superior Court and the Court of Appeals. Resp't's Br. at 36. In support of her request, she cites RCW 51.52.130 and RAP 18.1. Maxim did not respond to Ms. Taylor's request.

---

[3] We filed our original opinion on October 6, 2020. Ms. Taylor filed an affidavit of reasonable attorney fees and expenses on October 8, 2020. The affidavit properly limits the fee request to fees and expenses incurred on appeal. Counsel for Ms. Taylor notified our court clerk, that despite her request for reasonable attorney fees and costs in her brief, we did not address the issue in our opinion. We subsequently withdrew our opinion.

If applicable law grants a party the right to recover reasonable attorney fees and expenses on review, the party must request fees or expenses and devote a section of its opening brief to the request. RAP 18.1(a), (b). Ms. Taylor has complied with these requirements.

RCW 51.52.130(1) provides in pertinent part: "If, on appeal to the . . . appellate court . . . in cases where a party other than the worker . . . is the appealing party and the worker's . . . right to relief is sustained, a reasonable fee for the services of the worker's . . . attorney shall be fixed by the court." Here, Maxim appealed from the superior court decision, and we sustained Ms. Taylor's right to relief. For this reason, we award Ms. Taylor a reasonable fee for her attorney's services for work performed on appeal.

We note that a prevailing party, such as Ms. Taylor, is entitled to recover costs in accordance with RAP 14.4. We deem her October 8 filing a sufficient request for costs.

The determination of the amount of attorney fees and awardable costs will be made by our commissioner in accordance with RAP 18.1(f). An objection to Ms. Taylor's attorney fee and expense request, if any, shall be filed and served within 10 days after the filing of this opinion.

No. 36920-0-III
*Taylor v. Maxim Healthcare Servs.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Pennell, C.J.                                                      Siddoway, J.

15