**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 2 7 2015

Fairhurst, O.
for CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Aug 27, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| EDWARD O. GORRE, | ) | |
| | ) | No. 90620-3 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| CITY OF TACOMA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES, | ) | Filed    AUG 2 7 2015 |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

YU, J.—This is an appeal from a denial of a workers' compensation claim. Under the Industrial Insurance Act (Act), Title 51 RCW, a worker injured in the course of employment suffers from an "occupational disease" and is entitled to certain benefits. The burden of proving an occupational disease generally falls on the worker. That is, to receive benefits an injured worker typically must show that

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3

his or her injury arose naturally and proximately from employment. This case involves an exception that shifts that burden in certain circumstances.

Under RCW 51.32.185(1), a firefighter who suffers from any of four enumerated classes of injury receives a rebuttable evidentiary presumption that the injury is an occupational disease. At issue here are two of those presumptive classes of occupational disease:

> (1) In the case of firefighters . . . there shall exist a prima facie presumption that: (a) *Respiratory disease*; . . . and (d) *infectious diseases* are occupational diseases. . . . This presumption of occupational disease may be rebutted by a preponderance of the evidence. . . .
>    . . . .
> (4) The presumption [for infectious diseases] shall be extended to any firefighter who has contracted any of the following infectious diseases: Human immunodeficiency virus/acquired immunodeficiency syndrome, all strains of hepatitis, meningococcal meningitis, or mycobacterium tuberculosis.

RCW 51.32.185 (emphasis added). A firefighter who does not qualify for RCW 51.32.185(1)'s presumption may still receive benefits, but he or she retains the burden of proof.

Edward O. Gorre, a firefighter employed by the city of Tacoma (City), suffers from valley fever (coccidioidomycosis). Gorre's diagnosis is not disputed. At issue instead is whether valley fever is a "respiratory disease" or an "infectious disease" under RCW 51.32.185(1)(a) or (d) that shifts the burden of proving the disease's

*Gorre v. City of Tacoma*, No. 90620-3

proximate cause from Gorre to the employer City. The answer involves two questions of statutory interpretation.

First, we must interpret "respiratory disease" in RCW 51.32.185(1)(a). Gorre asks us to affirm the Court of Appeals, which adopted the term's ordinary dictionary definition. The City urges us to interpret it as a term of art, limiting respiratory diseases to what doctors diagnose as such. Second, we must interpret the scope of RCW 51.32.185(1)(d)'s presumption for "infectious diseases" and specifically what RCW 51.32.185(4) means by stating that the presumption "shall be extended to" HIV and AIDS, hepatitis, meningitis, and tuberculosis. The issue is whether that list of diseases is exclusive. The Court of Appeals held it was not, interpreting RCW 51.32.185(1)(d) to cover every infectious disease, including valley fever.

We reverse the Court of Appeals and reinstate the superior court's judgment in the City's favor. We conclude that "respiratory disease," as used in RCW 51.32.185(1)(a), refers only to diseases that medical experts diagnose as respiratory diseases. We also conclude that the "infectious diseases" qualifying for RCW 51.32.185(1)(d)'s evidentiary presumption are limited to those diseases specifically enumerated in RCW 51.32.185(4). Because medical experts in Gorre's case testified that valley fever is an infectious disease, not a respiratory one, and because it is not one of the infectious diseases enumerated in RCW 51.32.185(4), the presumption does not apply.

3

*Gorre v. City of Tacoma*, No. 90620-3

BACKGROUND

A firefighter employed by the City since 1997, Gorre fell ill shortly after returning to Washington from a trip to Las Vegas, Nevada. His diagnosis was initially a mystery. Doctors went through several tentative diagnoses before a skin biopsy tested positive for valley fever. Valley fever is a fungal infection endemic to the desert southwest, including Nevada and especially California's San Joaquin Valley (where the name derives). The fungus favors warm, dry climates, and though it lives in the desert's arid soil, it releases spores into the air if the soil is disturbed. Humans acquire valley fever by inhaling those spores.

Gorre filed for workers' compensation benefits with the City and the Department of Labor and Industries. After both entities rejected his claim, Gorre appealed to the Board of Industrial Insurance Appeals (Board). His administrative appeal included both procedural and factual components. As to procedure, Gorre asserted that he had a "respiratory disease" and an "infectious disease" under RCW 51.32.185(1), which shifted the burden of proving a nonemployment cause of valley fever to the City. As to fact, Gorre alleged that he was exposed to the fungus from responding to emergency calls on Interstate 5, where he inhaled spores transported by vehicles traveling north from California.[1]

---

[1] Gorre also argued that he suffered from eosinophilic lung disease, separate from and in addition to valley fever. But after hearing medical testimony, the Board found Gorre's only diagnosis was valley fever. The Court of Appeals affirmed. *Gorre v. City of Tacoma*, 180 Wn.

*Gorre v. City of Tacoma*, No. 90620-3

After hearing extensive motions, an industrial appeals judge (IAJ) ruled that even if RCW 51.32.185 applied, the City's initial evidence had rebutted the presumption. The IAJ then held an evidentiary hearing where Gorre retained the burden of proving an employment-related exposure to valley fever. Following several days of testimony, the IAJ proposed a decision and order finding that valley fever was an infectious disease that Gorre likely acquired in Nevada. Expert testimony supported these findings, and the Board adopted them. The Board affirmed rejection of Gorre's benefits claim. The Pierce County Superior Court likewise affirmed after a bench trial.

The Court of Appeals reversed and remanded for a new evidentiary hearing, holding that Gorre was entitled to RCW 51.32.185(1)'s presumptions for respiratory and infectious diseases. *Gorre v. City of Tacoma*, 180 Wn. App. 729, 324 P.3d 716 (2014). We granted the City's petition for review. *Gorre v. City of Tacoma*, 181 Wn.2d 1033, 343 P.3d 760 (2015).

STANDARD OF REVIEW

A modified standard of review applies to workers' compensation appeals. The Board's decision and order is presumed correct, and the party challenging that decision carries the burden on appeal to the superior court. RCW 51.52.115. The

---

App. 729, 760, 324 P.3d 716 (2014). Since Gorre has not cross petitioned for review of that finding, it is not before us.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

superior court can make its own findings or reach a different result only if the judge

finds by a preponderance of the evidence that the Board's findings and decision are

erroneous. *Ravsten v. Dep't of Labor & Indus.*, 108 Wn.2d 143, 146, 736 P.2d 265

(1987).

When reviewing the Board proceedings, we only examine "the record to see

whether substantial evidence supports the findings made after the superior court's

de novo review, and whether the court's conclusions of law flow from the findings."

*Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999). However,

statutory interpretation remains a question of law we determine de novo. *Cockle v.*

*Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

ANALYSIS

A.    INTERPRETATION OF "RESPIRATORY DISEASE" IN RCW 51.32.185(1)(a)

We first consider if valley fever is a "respiratory disease" under RCW

51.32.185(1)(a). This is a question of statutory interpretation,[2] so we begin with the

plain meaning of the term. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d

1, 11, 43 P.3d 4 (2002). Plain meaning is "discerned from the ordinary meaning of

_____

[2] The briefing somewhat mischaracterizes the issue as whether a certain medical condition is a "respiratory disease" is a question of law or fact. What "respiratory disease" means in RCW 51.32.185(1)(a) is undisputedly a question of law susceptible to judicial review. *Cockle*, 142 Wn.2d at 807. And whether a firefighter has a "respiratory disease"—whatever its statutory meaning—is a fact question reserved for the fact finder. So the real dispute here is how to interpret "respiratory disease" in RCW 51.32.185(1)(a), and specifically if the legislature intended the term to carry its ordinary or medically accepted meaning.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3

the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007). Our ultimate task, of course, is to ascertain and carry out the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9.

Because the Act does not define "respiratory disease," the Court of Appeals turned to an ordinary dictionary. The Court of Appeals merged the ordinary definitions of "respiration" and "disease" and concluded the plain meaning of "respiratory disease" is any "discomfort or condition of an organism or part that impairs normal physiological functioning relating, affecting, or used in the physical act of breathing." *Gorre*, 180 Wn. App. at 762-63. Dictionaries are an appropriate source of plain meaning when the ordinary definition furthers the statute's purpose. *State v. Veliz*, 176 Wn.2d 849, 854, 298 P.3d 75 (2013).

But the ordinary definition of a term is not dispositive of a statute's plain meaning when the term is also a term of art. *Id.* "Respiratory disease" has a unique meaning in the medical community, which uses the term to refer to a category of specific diagnoses that share certain pathologies. This is different than the broad ordinary definition, so we must ascertain the legislature's intent and choose the meaning that best furthers the statute's intended purpose. *Campbell & Gwinn*, 146 Wn.2d at 9. Did the legislature intend to presume that *any* effect on breathing is an occupational disease acquired while firefighting, consistent with the ordinary

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

definition of respiratory disease? Or did it intend the presumption to apply only to specific diseases that doctors diagnose as respiratory diseases? For three reasons, we hold that interpreting "respiratory disease" as a term of art better reflects the legislature's purpose in enacting RCW 51.32.185(1)(a).

First, interpreting "respiratory disease" as a specific category of diagnoses rather than a broad category of symptoms fits with the mechanics of RCW 51.32.185(1)(a). The statute is simply a shortcut for proving medical causation—i.e., that job conditions caused an occupational disease. Causation is a specialized area where the legislature and the courts have always deferred to expert diagnosis. *See Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 477, 745 P.2d 1295 (1987); *Parr v. Dep't of Labor & Indus.*, 46 Wn.2d 144, 145, 278 P.2d 666 (1955); *Ehman v. Dep't of Labor & Indus.*, 33 Wn.2d 584, 600, 206 P.2d 787 (1949). Gorre responds that the ordinary definition of "respiratory disease" still requires evidence that his breathing is impaired. But testimony about symptoms is a step removed from a doctor's opinion about the symptoms' underlying cause. We do not believe the legislature meant to minimize the significance of medical opinion to claims under the Act when it drafted RCW 51.32.185(1)(a).

Second, the relationship between RCW 51.32.185(1)(a)'s presumption and RCW 51.32.185(1)(b)-(d)'s three presumptions supports interpreting "respiratory disease" as a term of art. RCW 51.32.185(1)'s four presumptions vary in scope

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3

depending on the specific injury. For example, the legislature created a presumption for *all* respiratory diseases, but it limited the presumptions for cancers, heart conditions, and, as discussed below, infectious diseases. RCW 51.32.185(1)(a)-(d), (3), (4). Using the ordinary meaning of "respiratory disease," however, results in RCW 51.32.185(1)(a) becoming a "super presumption" that undermines the express limits on the other presumptions.

For example, the legislature omitted lung cancer from the list of cancers entitled to RCW 51.32.185(1)(c)'s presumption. RCW 51.32.185(3). Yet under the ordinary definition, lung cancer would almost certainly qualify for the respiratory disease presumption because it invades an organ critical to breathing. Likewise, RCW 51.32.185(1)(b) applies only to heart problems experienced shortly after certain firefighting activities. But if a heart problem occurs too late for that presumption, it becomes a respiratory disease as long as breathing is also impaired. In other words, the Court of Appeals interpretation allows claimants to plead around the statutory limits in RCW 51.32.185. We believe the legislature intended RCW 51.32.185(1)(a) to cover only what doctors diagnose as a respiratory disease and not what claimants strategically label as one.

Third, interpreting "respiratory disease" as a term of art is consistent with the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3

presumption's intended scope. When the legislature enacted RCW 51.32.185(1)(a),[3] it justified the presumption by citing an evidentiary link between "respiratory diseases," as the term is used in the statute, and firefighters' routine exposure to "smoke, fumes, and toxic or chemical substances." LAWS OF 1987, ch. 515, § 1. Thus, the legislature necessarily intended RCW 51.32.185(1)(a) to cover respiratory diseases caused by exposure to smoke, fumes, and chemicals—hazards pervasive in fighting fires.

Yet smoke, fumes, and chemicals do not cause valley fever. As an expert in Gorre's case testified, valley fever results from exposure to a fungus that dies in fire's extreme heat. This illustrates the problem with using the ordinary definition of "respiratory disease." Interpreting RCW 51.32.185(1)(a) to include respiratory diseases unrelated to smoke and chemical inhalation broadens the scope of presumption beyond the legislature's underlying evidentiary justification for it. It leads to the presumption covering *any* impairment to breathing, even if the condition—like valley fever—has no established connection to the risks inherent in firefighting.

Unfortunately the dissent adopts an interpretation of "respiratory disease" that

---

[3] The respiratory disease presumption was originally codified at former RCW 51.32.185(1). LAWS OF 1987, ch. 515, § 2. As discussed below, the legislature amended the statute in 2002 to add presumptions for cancers, heart problems, and infectious diseases, LAWS OF 2002, ch. 337, § 2, and the respiratory disease presumption was recodified at RCW 51.32.185(1)(a).

10

*Gorre v. City of Tacoma*, No. 90620-3

is not consistent with risks connected to fighting fire. Instead, the dissent concludes

that because firefighting is risky and because valley fever is acquired through

inhalation, the legislature must have intended the disease to be a "respiratory

disease" under RCW 52.31.185(1)(a). Dissent at 4-5. While the dissent assures us

that adopting a layperson's definition preserves the importance of doctors testifying

about a "disease's causation and its effects," *id.* at 5, interpreting valley fever as a

respiratory disease undercuts the value of that very testimony in Gorre's case:

> Q.   . . . Dr. Ayars is Valley Fever an infectious disease?
> A.   Yes.
> Q.   Is it an infectious disease that can cause *respiratory symptoms*?
> A.   Yes.
> . . . .
> Q.   In your professional medical opinion what are the chances that Lieutenant Gorre acquired Valley Fever in Washington State? Can you assign a number or percentage?
> A.   Well, right now we have zero to start with. I guess, you could say one in a million. The people that could potentially be at risk are people that are gardeners. . . . [A]s far as trying to link it to firefighters, there is absolutely no link there.

Tr. of Bd. Proceedings (June 14, 2010) at 362-68 (emphasis added). Despite the fact

that the medical community does not consider valley fever either a respiratory

disease or a disease common to firefighting, the dissent concludes the legislature

would have intended the presumption to apply nonetheless. We believe otherwise.[4]

---

[4] The dissent also suggests that, though the layperson's definition of "respiratory disease" is an appropriate interpretation here, it "may no longer be helpful" in other cases. Dissent at 4 n.2. We agree that the triggering of RCW 51.31.185(1)(a)'s presumption depends on the facts of each case, but those differences go to *application* of the statute, not its *interpretation*. This supports our view that "respiratory disease" is a term of art to be applied by medical experts.

11

*Gorre v. City of Tacoma*, No. 90620-3

There is no doubt firefighting is a dangerous profession, a fact the legislature recognized by enacting RCW 51.32.185. But our appreciation for the work firefighters do is not a license to discard the ample evidence that the legislature nonetheless intended the statute's presumptions to be narrow. For all the above reasons, we interpret "respiratory disease" in RCW 51.32.185(1)(a) as a term of art to mean only those diseases the medical profession understands to be respiratory diseases. In practice, this requires medical expert testimony that a claimant's disease is a respiratory disease, not merely testimony that it affects breathing.

B. INTERPRETATION OF "INFECTIOUS DISEASES" IN RCW 51.32.185(1)(d)

We turn next to the scope of RCW 51.32.185(1)(d)'s presumption for "infectious diseases." The issue is whether that general reference to infectious disease includes all infectious diseases (including valley fever), or whether the presumption is limited by RCW 51.32.185(4):

> The presumption established in subsection (1)(d) of this section shall be extended to any firefighter who has contracted any of the following infectious diseases: Human immunodeficiency virus/acquired immunodeficiency syndrome, all strains of hepatitis, meningococcal meningitis, or mycobacterium tuberculosis.

The parties disagree about the effect of RCW 51.32.185(4). Gorre argues it is merely illustrative of possible infectious diseases; the City responds that the list is an exclusive definition of "infectious diseases" qualifying under RCW 51.32.185(1)(d). This question turns on what the legislature intended by "extending" the infectious

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3

disease presumption to certain diseases.

We again start with the statute's plain meaning. If the text has only one reasonable meaning, it is unambiguous and we give it that effect. *Campbell & Gwinn*, 146 Wn.2d at 11-12. Unlike "respiratory disease," "extend" is not a term of art in this context, so a dictionary is an appropriate starting point. Gorre reads "extend" to mean "increase the scope, meaning, or application of," as in the diseases enumerated in RCW 51.32.185(4) "increase the scope of" the infectious disease presumption described in RCW 51.32.185(1)(d). He bolsters his definition by noting different verbs to modify the cancer and infectious disease presumptions in RCW 51.32.185. The legislature clearly drafted RCW 51.32.185(3) to restrict RCW 51.32.185(1)(c)'s cancer presumption, which "shall only apply to" the specific cancers it identifies. Gorre argues that RCW 51.32.185(4) is not as unambiguously limiting, perhaps indicating a different intended effect. The City responds with a competing definition that means "to reach in scope or application," arguing RCW 51.32.185(4) therefore limits the scope of RCW 51.32.185(1)(d).

Even with the benefit of context, however, there is not a single, reasonable interpretation of "shall be extended to" that makes RCW 51.32.185(4) unambiguous.[5] We must therefore resort to other aids of statutory interpretation to

---

[5] For example, Gorre's interpretation is strained. Since the diseases listed in subsection (4) are infectious diseases, they would already qualify under RCW 51.32.185(1)(d)'s presumption for "infectious diseases." And if RCW 51.32.185(1)(d) subsumes the diseases listed in RCW

13

*Gorre v. City of Tacoma*, No. 90620-3

resolve that ambiguity. *State v. A.G.S.*, 182 Wn.2d 273, 277-78, 340 P.3d 830 (2014). And one of those aids—legislative history—ends our analysis. It offers conclusive evidence that RCW 51.32.185(4) limits, not expands, RCW 51.32.185(1)(d).

The legislature added the infectious disease presumption to RCW 51.32.185 in 2002 after extended negotiations between two primary stakeholders. Firefighters lobbied in support, arguing that while they were routinely exposed to contagious bodily fluids on the job, it was difficult to prove a specific employment-related exposure. The firefighters' employers, cities and fire commissioners, were concerned about the cost of insurance premiums increasing with the number of presumptively covered diseases. H.B. REP. ON H.B. 2663, 57th Leg., Reg. Sess. (Wash. 2002). The goal was to agree on a bill that "represent[ed] a compromise with no opposition." S.B. REP. ON SECOND SUBSTITUTE H.B. 2663, at 2, 57th Leg., Reg. Sess. (Wash. 2002).

The bill's three sequential drafts chronicle those negotiations. As first introduced, House Bill (HB) 2663 was significantly broader than the presumptions ultimately enacted. For example, the presumption for cancers, which was also added

---

51.32.185(4), it is hard to read it as increasing the presumption's scope. The scope of RCW 51.32.185(1)(d), with or without RCW 51.32.185(4), is still any infectious disease. Likewise, the City's interpretation that RCW 51.32.185(1)(d) "reaches" the diseases in RCW 51.32.185(4) does not necessarily preclude the presumption from also reaching other diseases.

in 2002, originally covered all cancers affecting a number of organ systems, not just the specific cancers in today's statute. *Compare* H.B. 2663, at 2, 57th Leg., Reg. Sess. (Wash. 2002) (applying cancer presumption to "cancers affecting the . . . lymphatic, digestive, hematological, urinary, skeletal, oral, or reproductive systems"), *with* RCW 51.32.185(3) (limiting cancer presumption to "prostate cancer diagnosed prior to age fifty, primary brain cancer, malignant melanoma, leukemia, non-Hodgkin's lymphoma, bladder cancer, ureter cancer, colorectal cancer, multiple myeloma, testicular cancer, and kidney cancer"). Likewise, HB 2663 did not identify any specific infectious diseases. H.B. 2663, 57th Leg., Reg. Sess. (Wash. 2002). The cities opposed this first draft as too expensive, their representative expressing "concern . . . that right now [the presumption's language] is just 'infectious diseases.'"[6] A legislator who sponsored the bill agreed that "the scope . . . need[ed] to be narrowed."[7]

The bill's second draft clearly addressed the concern that the infectious disease presumption was too inclusive. Substitute HB 2663 limited the presumption to four specific diseases by adding a subsection (4):

> (4) For the purposes of this act, "infectious disease" *means* acquired immunodeficiency syndrome, all strains of hepatitis, meningococcal meningitis, and mycobacterium tuberculosis.

---

[6] Hr'g on H.B. 2663 Before the H. Commerce and Labor Comm., 57th Leg., Reg. Sess. (Jan. 28, 2002), at 92 min., 57 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

[7] *Id.* at 91 min., 48 sec.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

SUBSTITUTE H.B. 2663, at 2, 57th Leg., Reg. Sess. (Wash. 2002) (emphasis added). Representatives for both sides testified they accepted this limitation. Their focus then turned to narrowing the cancer presumption, which still broadly covered cancers of many body systems. *See* H.B. REP. ON H.B. 2663, 57th Leg., Reg. Sess. (Wash. 2002).

The bill's final draft, Second Substitute HB 2663, finally narrowed the list of cancers. SECOND SUBSTITUTE H.B. 2663, at 3, 57th Leg., Reg. Sess. (Wash. 2002) (as passed by legislature). Yet it also modified subsection (4) to its current form:

> The presumption established in subsection (1) (d) of this section *shall be extended to* any fire fighter who has contracted any of the following infectious diseases: Human immunodeficiency virus/acquired immunodeficiency syndrome, all strains of hepatitis, meningococcal meningitis, or mycobacterium tuberculosis.

*Id.* (emphasis added). The addition of "shall be extended to" is not explained in the written legislative record, which characterizes the change to subsection (4) only as a "[t]echnical correction[ ] . . . to clarify the references to . . . HIV/AIDS." H.B. REP. ON H.B. 2663, at 4, 57th Leg., Reg. Sess. (Wash. 2002). The new language may have come from a companion senate bill that also "extended" its infectious disease presumption to the same diseases.[8] *See* SUBSTITUTE S.B. 6643, 57th Leg., Reg. Sess. (Wash. 2002).

---

[8] Notably, the senate interpreted subsection (4) in its bill as "limit[ing] the types of infectious diseases for which a presumption of occupational disease is established." S.B. REP. ON SUBSTITUTE S.B. 6643, at 1, 57th Leg., Reg. Sess. (Wash. 2002). The first draft of the senate bill, like HB 2663, left infectious diseases undefined. S.B. 6643, 57th Leg., Reg. Sess. (Wash. 2002).

*Gorre v. City of Tacoma*, No. 90620-3

Gorre argues the change to subsection (4)—eventually codified at RCW 51.32.185(4)—signals that the legislature intended to enlarge the infectious disease presumption. But that inference is at odds with the uniform interpretation of those involved in drafting the law. *See State v. Evans*, 177 Wn.2d 186, 199, 298 P.3d 724 (2013) (using "probative committee hearings" to derive legislative intent). After the house passed Second Substitute HB 2663, the sponsoring representative testified before members of the senate to urge its passage in that chamber:

> This bill passed unanimously out of the House . . . due to the fact that we sat down with the firefighter organizations, with the fire districts, and with the cities and worked out a compromise. . . . [T]he compromise on this bill is really in the last section of that bill . . . where we basically define the cancers . . . and *also restrict the infectious diseases* and hence we kind of reduce the cost of this.[9]

The stakeholders echoed a restrictive interpretation of subsection (4). The firefighters' representative testified that negotiations had "very much narrowed the scope of this particular bill. . . . The cancers have been limited . . . [and] *the infectious diseases are limited to just those four diseases that have been listed in the text of the bill.*"[10] The cities' representative likewise cited subsection (4)'s "narrowed definition of infectious diseases" as a reason the cities withdrew their previous

---

[9] Hr'g on Second Substitute H.B. 2663 Before the S. Labor, Commerce and Fin. Inst. Comm., 57th Leg., Reg. Sess. (Feb. 25, 2002), at 25 min., 55 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (emphasis added).

[10] Hr'g on Second Substitute H.B. 2663 Before the S. Ways and Means Comm., 57th Leg., Reg. Sess. (Mar. 1, 2002), at 51 min., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (emphasis added).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3

opposition to the bill.[11]  The senate passed Second Substitute HB 2663 without amendment, and it was incorporated into RCW 51.32.185.  LAWS OF 2002, ch. 337, § 2.  The final bill report also treats subsection (4) as a limiting provision.  FINAL B. REP. ON SECOND SUBSTITUTE H.B. 2663, 57th Leg., Reg. Sess. (Wash. 2002).

While curious, the change to RCW 51.32.185(4) does not overcome the conclusive history that the provision limits the infectious disease presumption.  From the outset, the stakeholders and legislators acknowledged the original bill was overbroad.  Each successive draft addressed that concern, first in Substitute HB 2663 by enumerating certain infectious diseases, and then in Second Substitute HB 2663 by narrowing the number of cancers.  This is a clear trend of whittling the presumptions, not expanding them.  *Cf. Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 470, 139 P.3d 1078 (2006) (sequential drafts of a bill can indicate legislative intent).  Instead of interpreting the statute consistent with this trend, Gorre asks us to infer that in the final stages of negotiation, the legislature eschewed compromise and revived an expansive infectious disease presumption that it had already outright rejected.  Nothing in the legislative record supports such an abrupt shift in policy.

Considering the legislative record as a whole, we hold that RCW 51.32.185(4) limits the presumption in RCW 51.32.185(1)(d) to the infectious diseases expressly enumerated.

---

[11] *Id.* at 52 min., 35 sec.

*Gorre v. City of Tacoma*, No. 90620-3

CONCLUSION

RCW 51.32.185 is a narrow exception to the Act's general rule that workers must prove they suffer from an occupational disease. Consistent with that intent, we interpret "respiratory disease" in RCW 51.32.185(1)(a) to mean those diseases that the medical profession understands to be respiratory diseases. We also interpret RCW 51.32.185(4) as the exclusive list of "infectious diseases" qualifying under RCW 51.32.185(1)(d). This does not preclude firefighters with impaired breathing or other infectious diseases from obtaining workers' compensation benefits; it just requires them to prove causation just like any other injured worker.

We reverse the Court of Appeals and reinstate the superior court's judgment.[12]

---

[12] Substantial evidence supports the superior court's findings and the court's legal conclusions flow from those findings. *See Ruse*, 138 Wn.2d at 5-6. The superior court adopted the Board's findings that valley fever was an infectious disease, not a respiratory one, and that Gorre's exposure occurred in Nevada. The superior court concluded that Gorre failed to show he suffered an occupational disease under the Act.

Substantial evidence exists if a rational trier of fact could find the facts by a preponderance of the evidence; unchallenged findings are verities on appeal. *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 44 P.3d 1186 (2015) (citing *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010)). Not only does Gorre fail to challenge valley fever's classification as an infectious disease, his briefs rely on it. And the City's medical experts testified on a more probable than not basis that Gorre was exposed to the fungus while golfing in Las Vegas.

The superior court's legal conclusion that Gorre's valley fever is not an occupational disease flows from those two findings. An occupational disease must "arise[ ] naturally and proximately out of employment." RCW 51.08.140. Golfing in Nevada is not naturally or proximately connected to firefighting in Washington. Reinstatement of the superior court's judgment is therefore the appropriate remedy.

19

_____ Lin, J.

WE CONCUR:

Madsen, C.J. _____     Stephens, J. _____

_____     Wiggins, J. _____

Owens, J. _____     González, J. _____

Fairhurst, J. _____

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*
Dissent by Johnson, J.

No. 90620-3

JOHNSON, J. (dissenting)—This case involves the Industrial Insurance Act's (IIA)[1] evidentiary exception designed to benefit and protect our state's firefighters. In exchange for firefighters' willingness to compromise their own health and safety as a part of their occupation, the legislature grants them a rebuttable presumption that certain afflictions—respiratory diseases, certain cancers, certain heart problems, and infectious diseases—are prima facie occupational diseases under RCW 51.08.140. We are obligated to construe this remedial exception broadly, in favor of those whose job puts them at higher risk for disease and infection. But in applying that statute, the majority finds ambiguity where there is none and arrives at an interpretation of the statute that contravenes the statute's plain language and legislative intent. For the foregoing reasons, I respectfully dissent.

---

[1] Title 51 RCW.

*Gorre v. City of Tacoma*, No. 90620-3
(Johnson, J., dissenting)

*Statutory Interpretation*

The IIA provides certain benefits to employees who suffer from occupational diseases. To qualify for benefits, a claimant generally bears the burden of establishing causation between the workplace conditions and the disease. RCW 51.32.185(1) flips this burden with respect to those diseases firefighters are most susceptible to as a class: relevant to this case, we presume that "[r]espiratory disease[s]" and "infectious diseases" are caused by the nature of their work. RCW 51.32.185(1)(a), (d). As discussed by the majority, the IIA does not provide a definition for "respiratory diseases" or "infectious diseases," and it is our obligation to interpret those terms in accord with legislative intent. We start that analysis with the purpose of the statute at issue.

The legislature specifically recognized that firefighters as a class suffer a higher rate of lung disease than the general public due to their regular exposure to not just smoke and fumes but also toxic or chemical substances. LAWS OF 1987, ch. 515, § 1. The legislature conferred this benefit in order to ease the evidentiary burden for firefighters, whose employment puts their health and safety at risk. Because the IIA "is remedial in nature," we are required to construe it "liberally . . . in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

worker." *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

Through that lens, the Court of Appeals correctly recognized that valley fever—a disease that "is transmitted through inhalation" and "impairs a person's respiratory system"—constitutes both a "respiratory disease" and an "infectious disease" under the statute.[2] *Gorre v. City of Tacoma*, 180 Wn. App. 729, 763, 324 P.3d 716 (2014), *review granted*, 181 Wn.2d 1033, 343 P.3d 760 (2015). I agree with the Court of Appeals that valley fever constitutes both types of diseases and that both exceptions qualify Gorre for the rebuttable presumption.

*Respiratory Disease*

It is well settled that when a term is not defined by statute, the court may look to the dictionary to give the undefined term meaning. Ultimately, the court will adopt the interpretation that best advances the legislative purpose, but so long as the dictionary provides a definition consistent with legislative intent, it is an appropriate source for interpretative guidance. *LaCoursiere v. Camwest Dev., Inc.*, 181 Wn.2d 734, 742, 339 P.3d 963 (2014).

---

[2] These statutory terms do not purport to be mutually exclusive, and this court should refrain from reading a nonexistent limitation into what should have been a broad reading of the statutory exception.

*Gorre v. City of Tacoma*, No. 90620-3
(Johnson, J., dissenting)

Here, the Court of Appeals looked to the dictionary, which defines (1) "'respiratory' as 'of or relating to respiration,'" wherein "respiration" means the "'single, complete act of breathing,'" and (2) "'disease' as a 'cause of discomfort or harm,' or 'an impairment of the normal state of the living animal or plant body or any of its components that interrupts or modifies the part of the vital functions.'" *Gorre*, 180 Wn. App. at 762 (footnote omitted) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1934, 648 (2002)). Thus, "respiratory disease" is a condition of the respiratory system that causes discomfort or harm, impairing the normal physiological functioning relating to, affecting, or used in the physical act of breathing.

The dictionary definition reflects a common, layperson's understanding of "respiratory disease," and here it serves as an appropriate guide for interpretation. Where the legislative intent is to afford an exception to firefighters in recognition that they expose their lungs to all sorts of chemicals and substances, it follows that the legislature would intend to include those diseases, like valley fever, that are contracted through inhalation, infect the lungs, and cause serious damage to the respiratory system.[3]

---

[3] We address only the cases before us, but to the extent the dictionary definition could be applied to different facts in a manner that is incongruous with legislative intent, the dictionary definition may no longer be helpful. Here, the dictionary definition aptly serves as an

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3
(Johnson, J., dissenting)

The majority adopts a much narrower definition, reasoning in part that the exception serves as a shortcut to proving causation, which typically requires a plaintiff to present extensive medical expert testimony. Therefore, the legislature must have intended that "respiratory disease" consists of only those diseases that fall within the technical, medical definition.

The majority's analysis diminishes the larger purpose of the statute by focusing instead on its ancillary features. As discussed by the majority, the importance of expert medical testimony can certainly be inferred from the statute and legislative history; but the primary goal of the statute is to provide an evidentiary shortcut for certain diseases in recognition that airborne contaminants are a common cause of disease among firefighters. The majority's definition of "respiratory disease" could potentially exclude a whole host of other diseases, like valley fever, that are caused by inhaling contaminated air, but may be characterized by the medical community in a way that the legislature could not have predicted. This is why it is the role of medical experts to testify as to the medical aspects of the disease—such as the disease's causation and its effects—but it is within the proper ambit of the court to determine whether the legislature likely

_____

interpretative guiding tool for determining whether valley fever constitutes "respiratory disease" under the statute.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3
(Johnson, J., dissenting)

intended the exception to apply. Here, expert medical testimony established that valley fever is caused by the inhalation of toxic spores into the lungs, which causes serious respiratory and pulmonary symptoms. The medical community may categorize the disease differently, but a broader, ordinary interpretation of the term confirms our commitment to reading remedial statutes broadly and better reflects the underlying legislative purpose of this exception.

*Infectious Disease*

There is no dispute that valley fever constitutes an "infectious disease[]" under RCW 51.32.185(1)(d); medical experts on both sides testified that valley fever qualifies as an infectious disease. The dispute lies in the proper interpretation of subsection (4) of the statute, which provides that "[t]the presumption established in subsection (1)(d) of this section[, "infectious diseases,"] *shall be extended to* any firefighter who has contacted any of the following diseases . . . ." RCW 51.32.185(4) (emphasis added).

In interpreting the meaning of any statutory provision, we follow certain steps. First, when a statute's meaning is clear on its face, we give effect to that plain meaning as an expression of legislative intent. We discern that plain meaning from the ordinary meaning of the language at issue, the context in which the statutory provision is found, related provisions, and the statutory scheme as whole.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

If, after this, the term is then susceptible to two or more reasonable interpretations, we may look to other sources of legislative intent. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010).

The ordinary meaning of RCW 51.32.185(1)(d) is that the evidentiary exception applies to "infectious diseases." Subsection (4), by its ordinary meaning, requires that the term "infectious diseases" extend to four enumerated diseases. As recognized by the Court of Appeals, the phrase "shall be extended to" evinces the clear legislative intent to ensure the inclusion of four specific types of infectious diseases. Nothing within this subsection should be read to limit the coverage of infectious diseases generally.

Instead of applying the statute's plain meaning, the majority delves into legislative history, insisting that the statute is ambiguous because subsection (4) could be read as creating an exclusive list. But the majority manufactures this ambiguity. The language of this subsection does not contain any limiting phrases, nor by its terms does the subsection even suggest a limitation of the exception to the enumerated list. Subsection (4) purports to do nothing more than ensure coverage for four specified types of infectious diseases. The majority disagrees, reasoning that when the legislature said "shall extend to," it might have *actually* meant "shall *only* extend to." But this interpretation of the statute requires an

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3
(Johnson, J., dissenting)

inference that the legislature omitted the word "only" out of either sloppiness or mistake.

I disagree that such ambiguity exists. The legislature is perfectly proficient at drawing statutes carefully and will include limiting language when it intends to create a limitation. In fact, the legislature demonstrated its ability to do so in the two subsections immediately preceding subsection (4):

> (2) The presumptions established in subsection (1) of this section *shall be extended to* an applicable member following termination of service for a period of three calendar months for each year of requisite service, *but may not extend* more than sixty months following the last date of employment.
> (3) The presumption established in subsection (1)(c) of this section[, cancer,] *shall only apply to* any active or former firefighter who has cancer that develops or manifests itself after the firefighter has served at least ten years . . . . The presumption within subsection (1)(c) of this section *shall only apply to* prostate cancer diagnosed prior to the age of fifty, primary brain cancer, malignant melanoma, leukemia, non-Hodgkin's lymphoma, bladder cancer, ureter cancer, colorectal cancer, multiple myeloma, testicular cancer, and kidney cancer.

RCW 51.32.185 (emphasis added).

It is unlikely that the legislature, having expressly limited the exception's scope in both subsections (2) and (3), suddenly forgot how to do so when drafting subsection (4). It is also an unreasonable interpretation of the statute to assume this to be the case. The language of these preceding subsections is the strongest

8

*Gorre v. City of Tacoma*, No. 90620-3
(Johnson, J., dissenting)

conceivable evidence that the legislature knows *how* to create an exclusive list when it wants to but that it chose not to do so with respect to infectious diseases. It is inappropriate to delve into legislative history when the meaning of this provision is plain on its face. To replace the plain meaning of the statute with our own derived interpretation is to deprive the legislature of its own chosen words and carefully selected omissions and, in essence, rewrites the statutory language.

I would hold that the statute plainly covers infectious diseases and provides only an additional assurance that certain diseases fall within the statutory definition of "infectious disease." If the legislature intends to limit the scope of the exception with respect to infectious diseases, it is within its proper authority to revise the statute as it sees fit. But it is not the role of the court to read in language not present in the statute. Because it is undisputed that valley fever constitutes an "infectious disease," it is covered by the statute and Gorre should have been

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Gorre v. City of Tacoma*, No. 90620-3
(Johnson, J., dissenting)

entitled to the presumption in his favor. I respectfully dissent.

George McCloud, J.