# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALLEN G. GRIGGS, | No. 59233-9-II |
| Appellant, | |
| v. | |
| HEARTLAND EXPRESS OF IOWA, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Allen Griggs was a truck driver employed by Heartland Express Inc. of Iowa. He was involved in a collision while at work that left him injured. Griggs received medical treatment from his treatment providers and underwent two separate independent medical examinations to evaluate the extent of his injuries. Griggs filed a workers' compensation claim, which the Department of Labor and Industries allowed. Judge Woods of the Board of Industrial Insurance Appeals affirmed the Department's order on appeal.

Griggs then sought time-loss compensation for several different time frames. The Department ordered time-loss compensation for some time frames and denied compensation for others. Griggs and Heartland each appealed to the Board the portions of the Department's order that were unfavorable to them, and the appeals were consolidated. The Board affirmed in part and reversed in part, holding that Griggs was not entitled to time-loss compensation for any of the time periods in question. Griggs appealed to Kitsap County Superior Court, which affirmed the Board.

Griggs appeals. He argues that the Board's earlier decision to allow his claim should have precluded the Board from later determining he was not entitled to any time-loss compensation. He also complains that the Board should not have permitted the doctors who performed independent medical examinations to testify; that the Board improperly refused to admit medical records from one of Griggs' doctors into evidence; and that the Board improperly reassigned Judge Woods from the appeal regarding time-loss compensation.

We affirm the trial court and deny Griggs' request for damages, costs, and attorney fees on appeal.

FACTS

I. INJURY AND MEDICAL TREATMENT

Allen Griggs was a truck driver for Heartland Express Inc. of Iowa. He was involved in a collision in Wilsonville, Oregon on October 10, 2017, while working. The collision caused injuries to Griggs' neck, back, abdomen, and head. Griggs reports that as a result of these injuries, his mobility was impaired, he had problems with his hearing and vision, and he suffered headaches, as well as numbness and tingling in his legs. Griggs first received treatment at an emergency room about two and a half weeks after the accident, where he was diagnosed with abdominal wall hematoma.

Griggs began visiting a chiropractic physician, Dr. Payvand Aflatooni, six months after the accident. During the first visit, Dr. Aflatooni conducted a physical examination of Griggs. Dr. Aflatooni found that Griggs had decreased range of motion and documented "sprain-strain injuries of the neck, mid back[,] and low back[;] . . . myofascial pain restrictions[;] . . . [and] postconcussive

2

symptoms with headaches" all caused by the 2017 collision. Clerk's Papers (CP) at 577. Griggs continued to see Dr. Aflatooni regularly after the initial visit.

Following Griggs' first visit, Dr. Aflatooni referred Griggs to Dr. Lynn Staker, an orthopedist, for a "second opinion regarding [Griggs'] spinal issues and to evaluate [Griggs'] right ankle and foot." CP at 761. Griggs first saw Dr. Staker about 10 months after the accident and visited him several times over the ensuing year and a half. Dr. Staker filled out several activity prescription forms for Griggs, which stated that Griggs was unable to work for two discreet periods of time. Following Griggs' last visit, Dr. Staker reported that Griggs became "belligerent and upset" and complained that Dr. Staker had "done nothing for him." CP at 782. Griggs left Dr. Staker's office before the doctor could complete an examination.

Meanwhile, in March 2019, Griggs underwent an independent medical examination with a neurologist, Dr. Mark Holmes, and an orthopedic surgeon, Dr. Aleksandar Curcin. Doctors Holmes and Curcin prepared a report after examining Griggs and reviewing his medical records. They diagnosed Griggs with cervicodorsal, thoracic, and lumbosacral strains related to Griggs' workplace injury.

Several months later, Griggs underwent another independent medical examination with a neurologist, Dr. Kevin Connolly, and an orthopedic surgeon, Dr. Robert Waltz. After examining Griggs and reviewing his medical records and accident report, Connolly and Waltz compiled a report. They diagnosed Griggs with cervicodorsal and lumbosacral strains, both of which were related to the 2017 collision. They also identified "evidence of preexisting degenerative changes of arthritis in his ankles" and of "peripheral neuropathy [that] had not been previously observed."

CP at 515. They did not link these symptoms to the collision. Dr. Connolly was unable to "document a head injury." *Id.*

## II. CLAIM AND SUBSEQUENT LITIGATION

A. <u>Claim Allowance</u>

Griggs filed a claim for workers' compensation benefits with the Department of Labor and Industries. The Department ruled that Griggs' claim was allowed. Heartland protested and the Department affirmed its order. Heartland then appealed the order to the Board of Industrial Insurance Appeals.

In February 2020, Industrial Appeals Judge Woods issued a proposed decision and order stating that Griggs "was entitled to extraterritorial coverage" for the Oregon collision and affirmed the Department's order allowing Griggs' claim. Heartland petitioned for review of Judge Woods' proposed decision and order, and the Board denied the petition. Heartland subsequently appealed the decision to Kitsap County Superior Court. After a bench trial, the trial court affirmed the Board's decision to allow Griggs' workers' compensation claim.

B. <u>Procedural History of Time-Loss Compensation Litigation</u>

Meanwhile, in early March 2020, the Department issued orders that awarded time-loss compensation to Griggs for one time period but denied his requests for time-loss compensation for two other periods. Griggs protested the Department's order denying compensation and the Department affirmed the order. Griggs appealed to the Board.

A few months later, the Department issued another order directing Heartland to pay time-loss compensation for an additional time period. Heartland protested that order, and the Department affirmed. Heartland then appealed that order to the Board.

The Board consolidated Griggs' and Heartland's appeals and assigned Judge Woods to hear the consolidated appeal. Heartland moved to have the case reassigned to a different industrial appeals judge, and the acting chief industrial appeals judge granted the motion. The appeal was ultimately reassigned to Judge Jeffrey Friedman.

C.      Time-Loss Compensation Board Hearing and Order

The Board held hearings via telephone for the consolidated appeal in April 2022. Doctors Curcin, Connolly, and Aflatooni testified. Griggs and the Department intended to have Dr. Staker testify but were unable to locate him to secure his participation. Griggs sought to have his medical records from his visits with Dr. Staker admitted into evidence due to Dr. Staker's absence. The Board stated that it could not rule on Griggs' motion because it did not have Dr. Staker's records to review.

Dr. Curcin testified consistently with his findings from his examination of Griggs in March 2019. Dr. Curcin testified that he had not identified any indications that Griggs had physical restrictions during any of the time periods in dispute. Dr. Connolly testified consistently with his findings after Griggs' independent medical examination in May 2019. Dr. Connolly also concluded that for each of the time periods at issue, there were no objective findings to support temporary total disability entitling Griggs to time-loss compensation.

Dr. Aflatooni testified to his findings relating to Griggs' injuries. He noted that he reviewed both independent medical examination reports in advance of trial. He testified that while Griggs' condition improved in some ways over the course of treatment, "his lumbar spine, some of the tingling and numbness in his legs[,] and his inability to walk and sit for extended periods of time did not improve." CP at 581. Dr. Aflatooni testified that for one of the disputed time periods,

Griggs was unable to do any type of work. Dr. Aflatooni also testified that he "assume[d] that [Griggs] was not able to work during" the time period between when the industrial injury occurred and when Griggs first visited Dr. Aflatooni. CP at 590.

In a proposed order, the Board ruled that Griggs was not entitled to time-loss compensation during "any of the time periods at issue." CP at 7. The Board stated that "Dr. Aflatooni's testimony was sufficient to make a prima facie case that Mr. Griggs was unable to work." CP at 11. But the testimony from doctors Curcin and Connolly made a prima facie case that Griggs was not entitled to time-loss compensation, shifting the burden of persuasion back to Griggs. The Board concluded that because Dr. Aflatooni never explained how Griggs' injuries would prevent him from performing types of work other than trucking, Griggs failed to meet his burden. The Board also denied Griggs' earlier motion to admit medical records from Dr. Staker into evidence.

D. Superior Court Review

Griggs appealed to the Kitsap County Superior Court. The case proceeded to a bench trial. The trial court affirmed the Board, concluding that "Griggs was not a temporarily totally disabled worker" during any of the time periods at issue. CP at 964.

Griggs moved for reconsideration. The trial court denied the motion because it was untimely. Griggs then appealed to this court.[1]

ANALYSIS

Griggs asks us to overturn the Board's ruling on the consolidated appeal. He asks for $3.7 million in damages and $4,000 in attorney fees.

---

[1] Griggs' appeal to this court was originally dismissed as untimely. Griggs moved to modify the decision dismissing his appeal, and a panel of this court granted the motion to modify and reinstated the appeal.

6

Griggs makes many arguments on appeal. Primarily, he argues that the doctrines of claim and issue preclusion should have barred the Board from hearing the appeal because the Board had previously affirmed the Department's decision to allow his claim in the February 2020 order issued by Judge Woods. He next contends that doctors Curcin and Connolly should not have been permitted to testify before the Board. He claims that the Board erred when it did not admit medical records from Dr. Staker into evidence. And he argues that the Board also erred when it reassigned the appeal of the Department's time-loss compensation decisions away from Judge Woods.

## I. THE INDUSTRIAL INSURANCE ACT AND STANDARDS OF REVIEW

The Industrial Insurance Act, Title 51 RCW, "governs judicial review of workers' compensation cases." *Leitner v. City of Tacoma*, 15 Wn. App. 2d 1, 11, 476 P.3d 618 (2020). Under the Act, the Department determines whether to allow a workers' compensation claim. This decision is based on whether the worker was injured "in the course of" their employment, RCW 51.32.010, and if the injury occurred outside of Washington, whether the circumstances of their employment justify "[e]xtraterritorial coverage" RCW 51.12.120 (boldface omitted). After the Department has allowed a claim to proceed, it must then determine whether the worker is entitled to time-loss compensation for specified time periods if they are temporarily disabled and cannot work. *Value Village v. Vasquez-Ramirez*, 11 Wn. App. 2d 590, 597, 455 P.3d 216 (2019) (citing RCW 51.32.090(1)).

Parties may appeal Department decisions to the Board, and they may appeal Board decisions to the superior court. RCW 51.52.110. Generally, "the superior court only hears evidence or testimony that was included in the Board record." *Alaska Airlines v. Spanjer*, 35 Wn. App. 2d 22, 33, 576 P.3d 567 (2025). The superior court may only accept testimony outside the Board

7

record if it relates to "alleged irregularities in procedure before the [B]oard." RCW 51.52.115.[2] The superior court applies a modified de novo standard of review. *Alaska Airlines*, 35 Wn. App. 2d at 33-34. The appealing party has the burden to prove the Board's findings and conclusions were incorrect. *Id.* at 34. The superior court "can only reverse the Board's order if [it] 'finds by a preponderance of the evidence that the Board's findings and decision are erroneous.'" *Id.* (quoting *Gorre v. City of Tacoma*, 184 Wn.2d 30, 36, 357 P.3d 625 (2015)).

"On an appeal of an industrial insurance claim from the superior court, the appellate court reviews the superior court's decision, not the Board's order." *Leitner*, 15 Wn. App. 2d at 12. Our review is generally limited to "'whether substantial evidence supports the findings made'" by the superior court "'and whether the court's conclusions of law flow from the findings.'" *Id.* (internal quotation marks omitted) (quoting *Gorre*, 184 Wn.2d at 36). "We view the record in the light most favorable to the party who prevailed in superior court." *Id.*

"'The party presenting an issue for review has the burden of providing an adequate record to establish such error.'" *Tacoma S. Hosp., LLC v. Nat. Gen. Ins. Co.*, 19 Wn. App. 2d 210, 220, 494 P.3d 450 (2021) (quoting *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012)). If we are "'faced with a material omission in the record,'" we may "'decline to address a claimed error'" or "affirm the challenged decision if the incomplete record . . . fails to affirmatively

---

[2] Griggs has filed a motion that asks this court to consider additional evidence. But he has not shown that the evidence he asks us to add to the record relates to irregularities in procedure before the Board as required under RCW 51.52.115.

Griggs also asks this court to stay our decision of this case to await resolution of further issues before the Board. He alternatively asks us to remand for Industrial Appeals Judge Woods to address issues raised in this appeal. We deny the motion in its entirety.

establish an abuse of discretion." *Sisouvanh*, 175 Wn.2d at 619 (quoting *State v. Wade*, 138 Wn.2d 460, 465, 979 P.2d 850 (1999)). Additionally, we "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a).

## II. Claim and Issue Preclusion

Griggs primarily argues that the doctrines of issue and claim preclusion should have barred the Board from hearing Heartland's appeal of the Department's order granting time-loss compensation for one of the time periods. He asserts that when the Board determined his claim was allowed, the Board also adjudicated that he was entitled to time-loss compensation during a specific time period, and that this decision should have had a preclusive effect.

Griggs fails to provide us with a complete record of the Board's decision in the case about claim allowance. Although he quotes from the Findings of Fact and Conclusions of Law from that case in his brief, that document is not in the record before us. The record contains only a jurisdictional history of Griggs' claim, which quotes a small portion of the proposed decision and order from the claim allowance case:

> Mr. Griggs' industrial injury occurred during the course of employment with Heartland Express Incorporated, and he was entitled to extraterritorial coverage under the Washington State Industrial Insurance Act, under the provisions of RCW 51.12.120. The Washington State Department of Labor and Industries' order dated January 9, 2019, is correct and is affirmed.

CP at 272.

Claim and issue preclusion "are equitable doctrines that preclude relitigation of already determined causes." *Weaver v. City of Everett*, 194 Wn.2d 464, 472-73, 450 P.3d 177 (2019). The two doctrines differ in scope. *Id.* at 473. Claim preclusion, also called res judicata, "precludes relitigation of an entire claim when a prior proceeding involving the same parties and issues

culminated in a judgment on the merits." *Id.* at 480. Issue preclusion, also called collateral estoppel, applies when "'an issue of ultimate fact has [already] been determined by a valid and final judgment'" that the party against whom it is asserted had "a full and fair opportunity to litigate." *Id.* at 473-74 (internal quotation marks omitted) (quoting *State v. Dupard*, 93 Wn.2d 268, 273, 609 P.2d 961 (1980)).

Griggs claims the order affirming the Department's decision to allow his claim should have a preclusive effect here. But whether a claim is allowed and whether a worker is entitled to time-loss compensation are distinct inquiries. Claim allowance is based on a determination of whether the injury arose in the course of employment and, when relevant, whether coverage is appropriate for a work injury that occurred out-of-state. *See* RCW 51.32.010; RCW 51.12.120. By contrast, time-loss compensation is granted for time periods during which "the worker's condition is medically certified to preclude any employment." 33 DAVID K. DEWOLF & MATTHEW C. ALBRECHT, WASHINGTON PRACTICE: WASHINGTON CONSTRUCTION LAW MANUAL § 15A:9, at 453 (2d ed. 2018) (citing RCW 51.32.090(1)). Based on the record provided to us, it appears that the earlier case about claim allowance addressed the appropriateness of coverage in light of the fact that Griggs' injury occurred in Oregon. This is a distinct question from those raised in the appeal before us. And there is no indication in our record that the underlying issue of Griggs' ability to work based on his medical status was discussed or decided in the prior case. Thus, we reject Griggs' arguments that issue or claim preclusion applies.

### III. THE TRIAL COURT'S CONCLUSIONS ARE SUPPORTED BY EVIDENCE

Next, Griggs argues that the Board should not have permitted doctors Curcin and Connolly to testify at the hearing regarding time-loss compensation, and that absent their testimony,

Heartland has no evidence that Griggs was able to work. He reasons that the doctors could have testified at the 2020 Board hearing regarding claim allowance but did not. But Griggs fails to show he raised this issue to the Board or the trial court below. And he does not provide sufficient record or legal arguments to show the doctors' testimony was improper. We therefore reject this argument.

To the extent Griggs argues there was insufficient evidence to support the trial court's conclusions even if the testimony of doctors Curcin and Connolly was proper, we disagree. Both Dr. Curcin and Dr. Connolly testified that based on their evaluations of Griggs, they did not believe that Griggs' injury from the collision prevented him from working. Dr. Aflatooni merely assumed that Griggs was not able to work during the period between when the industrial injury occurred and when Griggs first visited him. And although Dr. Aflatooni testified that Griggs was unable to work for one of the time periods at issue, the trial court was entitled to rely on the contrary testimony of the independent evaluators. Because we view the record in the light most favorable to the superior court's conclusion and we do not reweigh evidence, we conclude that Curcin's and Connolly's testimony was sufficient evidence to support the trial court's conclusion that Griggs was not temporarily totally disabled during any of the disputed time periods and is therefore not entitled to time-loss compensation.

IV. INSUFFICIENT RECORD TO ADDRESS REMAINING ISSUES

Griggs fails to provide adequate record and legal authority to support his remaining claims. Griggs has not provided us with a report of proceedings for the bench trial below. The trial court order that Griggs appeals is brief and affirms the Board's decision without providing any reasoning or specifically addressing any of the procedural decisions the Board made that Griggs now objects

to. Additionally, the record does not include any evidence introduced in the superior court about any alleged procedural irregularities.

Griggs complained about the Board's decision not to admit Dr. Staker's medical records into evidence in his declaration to the trial court. But without the report of proceedings for the bench trial, we cannot determine whether Griggs actually argued this point in a way that would allow the trial court to rule on it. On the record available to us, we can determine only that when Griggs sought to have Dr. Staker's medical records admitted into evidence, the Board could not do so because it lacked a copy of the medical records and ultimately ruled that the records were inadmissible. We cannot identify anything in the record to demonstrate that Griggs ever provided a copy of the medical records to the Board. Because "the incomplete record . . . fails to affirmatively establish" error by either the trial court or the Board, we reject this claim. *Sisouvanh*, 175 Wn.2d at 619; *see also* RAP 9.2(b).

Griggs also objects to the Board's decision to reassign Judge Woods in the time-loss compensation case. Griggs again fails to provide sufficient record or legal authority to establish that the Board erred when it assigned a different industrial appeals judge for the proceedings or that the trial court erred when it affirmed the Board. Additionally, it is unclear whether Griggs properly raised this issue before the trial court. The record before us shows only that Griggs mentioned Woods' reassignment in passing in his statement of arrangements to the trial court. CP at 901. We therefore reject this claim.[3] We also decline to award Griggs damages, costs, or attorney fees.

---

[3] To the extent Griggs brings other claims that we have not addressed directly, we can identify no other grounds that might justify reversing the trial court, especially in light of the limited record before us.

No. 59233-9-II

## CONCLUSION

We affirm the trial court and deny Griggs' request for costs and attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, J_
GLASGOW, J.

We concur:

_Maxa, J_
MAXA, P.J.

_Lee, J_
LEE, J.