# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

LISA K. JOHNSON,

               Respondent,

v.

LIBERTY MUTUAL INSURANCE
COMPANY,

               Appellant,

DEPARTMENT OF LABOR AND
INDUSTRIES,

               Respondent.

No. 76026-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 17, 2017

LEACH, J. — Liberty Mutual Insurance Company appeals the superior court's judgment reversing the Board of Industrial Insurance Appeals (Board). The Board had affirmed a Department of Labor and Industries (Department) decision to deny benefits to Lisa Johnson for neurogenic thoracic outlet syndrome (TOS). Liberty Mutual challenges the sufficiency of the evidence to support the judgment, the exclusion of one of its expert witnesses, the special verdict form, the trial court's conclusions of law, and several jury instructions. The Department joins Liberty Mutual in asking this court to reverse, contending that the trial court improperly instructed the jury to interpret the law and to give Johnson the benefit of the doubt in finding facts. Because we agree with the Department, we reverse and remand for a new trial.

## Background

Johnson has performed clerical work for Liberty Mutual and its predecessor company since 1988.

Johnson filed an occupational disease claim under the Industrial Insurance Act[1] in 2009, complaining of numbness and tingling in her right pinkie and ring finger and pain in her elbow, upper arm, and shoulder. Dr. Carlton Keck diagnosed Johnson with lateral epicondylitis. She received surgery for that condition twice, in 2010 and 2011. The Department allowed the claim in June 2010, eventually allowing Johnson time-loss compensation for the diagnosed condition through July 2012.

Johnson continued to suffer right arm and hand pain and numbness. Eventually, Dr. Kaj Johansen diagnosed her with TOS.[2] Johnson saw numerous specialists and underwent further tests, but no other doctors diagnosed TOS. Johansen nonetheless performed two surgeries for TOS, in April 2012 and November 2013. Neither relieved Johnson's symptoms beyond short-term improvements.

The Department did not accept Johnson's claim that she had TOS related to her occupation. It closed the claim after it received confirmation that Johnson's elbow conditions had reached maximum medical improvement.

---

[1] Title 51 RCW.
[2] This is a rare condition caused by irritation of the nerves in the thoracic area.

Johnson appealed the Department's decision to the Board. In a deposition, Johansen testified that he diagnosed Johnson with TOS based on five criteria he had developed.[3] Johansen performed the two surgeries based on his diagnosis. Liberty Mutual presented testimony from four other specialists who examined Johnson between August 2009 and July 2012. All four disagreed with Johansen's TOS diagnosis.[4]

An industrial appeals judge found that Johnson "did not suffer neurogenic thoracic outlet syndrome proximately caused or aggravated by her occupational disease." She found the four dissenting specialists' testimony more persuasive than Dr. Johansen's. She issued a proposed order concluding that conditions proximately caused by Johnson's occupational disease were fixed and stable and did not entitle Johnson to further proper and necessary treatment. She proposed affirming the Department's order. The Board then adopted the judge's proposed decision.

Johnson appealed to the superior court. The parties tried the case to a jury. The jury found that the Board erred "when it found that plaintiff's work activities with defendant did not proximately cause or aggravate thoracic outlet syndrome." Accordingly, the trial court reversed the Board's order. The court

---

[3] Those criteria are: a credible explanation for how the problem occurred (a traumatic event or an occupation involving out-front or overhead arm posture); a characteristic history, including symptoms, physical findings, and responses to provocative tests; the condition failing to improve; satisfactory exclusion of alternative diagnoses; and response to a scalene block.

[4] These included neurologist Lewis Almaraz, MD (August 2009), vascular surgeon Daniel Neuzil, MD (July 2012), orthopedic surgeon James Harris, MD (September 2010), and vascular surgeon Richard Kremer, MD (April 2012).

remanded this case to the Department to issue an order to Liberty Mutual to allow Johnson's claim.[5]   Liberty Mutual appeals.   Both Johnson and the Department appear as respondents.

## Standard of Review

We apply the ordinary civil standard of review to trial court decisions on appeal from the Board.[6]   We review "whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings."[7]

## Analysis

We agree with the Department that the trial court made a prejudicial error in instructing the jury.

We review de novo alleged errors of law in jury instructions.[8]   We reverse the trial court where it erroneously instructed the jury about the applicable law and that error was prejudicial.[9]   Jury instructions are sufficient where they allow the parties to argue their theories, do not mislead the jury, and, when taken as a whole, properly inform the jury of the law to apply.[10]   We presume that a clear misstatement of the law is prejudicial.[11]

---

[5] The court also awarded Johnson $42,233.33 in costs and fees for the appeal.

[6] RCW 51.52.140.

[7] Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006)).

[8] Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

[9] Hue, 127 Wn.2d at 92.

[10] Hue, 127 Wn.2d at 92.

[11] Keller v. City of Spokane, 146 Wn.2d 237, 249-50, 44 P.3d 845 (2002).

In jury instruction 14, the trial court informed the jury,

> It is your duty to apply the law you have been provided to the facts of this case. You should keep in mind that the Industrial Insurance Act is remedial in nature and its beneficial purpose should be liberally construed in order to achieve its goal of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker. This does not require you to view the facts in a light more favorable to the injured worker in this case, but where reasonable minds may differ as to the meaning of the law you have been provided, the benefit of the doubt belongs to the injured worker.

Relying on this instruction, Johnson's counsel argued repeatedly in closing that "the benefit of the doubt belongs to the injured worker."

Jury instruction 14 misstated the law and misled the jury.

While courts liberally interpret ambiguities in the Industrial Insurance Act in favor of its beneficiaries, they do not apply liberal construction to determine facts.[12] In Hastings v. Department of Labor & Industries,[13] the Supreme Court found that the trial court erred in offering an instruction similar to the one here. The trial court had instructed the jury "that the Workmen's Compensation Act of the State of Washington should be liberally applied in favor of its beneficiaries, the injured workmen" and "its beneficent provisions should not be limited or curtailed by narrow construction."[14] The Supreme Court observed that while a trial court must "give a liberal interpretation of the workmen's compensation act" in its instructions, "the jury is confined to a determination of the facts of the case

---

[12] Cooper v. Dep't of Labor & Indus., 188 Wn. App. 641, 648, 352 P.3d 189 (2015); Ehman v. Dep't of Labor & Indus., 33 Wn.2d 584, 595, 206 P.2d 787 (1949).
[13] 24 Wn.2d 1, 13, 163 P.2d 142 (1945).
[14] Hastings, 24 Wn.2d at 12.

from the evidence presented, in accordance with the court's instructions as to the law."[15] In the case before it, though, "the jury was directed to apply the act 'liberally' and was cautioned against a narrow construction thereof. In other words," the court held, "the jury was invested with a power that only the court should exercise."[16]

Jury instruction 14 has the same problems. The instruction is both misleading and facially incorrect. It incorrectly states the jury's role, misinforming the jury that "where reasonable minds may differ as to the meaning of the law . . . , the benefit of the doubt belongs to the injured worker." A jury does not interpret "the meaning of the law." A jury determines "the facts of the case from the evidence presented, in accordance with the court's instructions as to the law."[17] By instructing the jury about how it should interpret the Industrial Insurance Act, instruction 14 misstated the law. Also, this instruction risked misleading the jury by conflating the functions of fact finding, statutory interpretation, and applying the law to facts. The authority Johnson cites does not support instruction 14; it shows only that courts are to liberally construe the Industrial Insurance Act—something no party contests.[18]

Because instruction 14 clearly misstated the law, we presume that it prejudiced Liberty Mutual.[19] Johnson offers no persuasive argument that the

---

[15] Hastings, 24 Wn.2d at 13.
[16] Hastings, 24 Wn.2d at 13.
[17] Hastings, 24 Wn.2d at 13.
[18] See RCW 51.12.010; Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).
[19] Keller, 146 Wn.2d at 249-50.

instruction did not prejudice Liberty Mutual and thus fails to rebut the presumption.

Even if instruction 14 did not clearly misstate the law and merely misled the jury, Liberty Mutual has shown prejudice because the misleading statement "was actively urged upon the jury."[20] Johnson expressly relied on instruction 14's concept that the "benefit of the doubt" belongs to the worker in advocating that the jury should find certain <u>facts</u>, urging the jury to "[a]pply the jury instructions giving the benefit of the doubt to the plaintiff in this case and sign the verdict form 'No.'" Indeed, this concept made up most of counsel's closing rebuttal argument.

"'A new trial is the appropriate remedy for prejudicial errors in jury instructions.'"[21] We thus remand for a new trial.

Because we remand for a new trial, we need not decide whether the evidence presented in the first trial was sufficient to support the jury verdict. Nor do we examine the trial court's discretionary decision to exclude as cumulative the testimony of an orthopedic surgeon, Dr. Harris.

---

[20] <u>Anfinson v. FedEx Ground Package Sys., Inc.</u>, 174 Wn.2d 851, 876-77, 281 P.3d 289 (2012) ("Anfinson has demonstrated that this misleading statement was prejudicial by showing that the incorrect statement was actively urged upon the jury during closing argument. No greater showing of prejudice from a misleading jury instruction is possible without impermissibly impeaching a jury's verdict."). We need not consider the State's other contention, that instruction 14 improperly shifted the burden of proof to Liberty Mutual to show that the Board's decision was correct.

[21] <u>Furfaro v. City of Seattle</u>, 144 Wn.2d 363, 382, 27 P.3d 1160 (2001) (quoting <u>Aero Int'l, Inc. v. United States Fire Ins. Co.</u>, 713 F.2d 1106, 1113 (5th Cir. 1983)).

But because the other issues in this appeal are likely to come up again on remand, we address them here.[22] On each issue, Liberty Mutual's arguments on appeal lack merit.

First, the trial court used a sufficient special verdict form.

The Board found that (1) Johnson did not suffer from TOS proximately caused or aggravated by her occupational disease and (2) the conditions that Johnson's occupational disease proximately caused or aggravated were fixed and stable and did not need proper and necessary treatment as of July 17, 2013. Liberty Mutual points out that while the first issue received the most attention, the Board made two distinct findings and Johnson sought review of both. The trial court selected a verdict form that considered only the first issue. Liberty Mutual contends that the special verdict form's exclusion of the second issue confused and misled the jury about the issues on appeal.

A special verdict form is sufficient if it allows the parties to argue their theories of the case, does not mislead the jury, and properly informs the jury of the law to apply.[23]

Here, the special verdict form was sufficient and did not prejudice Liberty Mutual. The Board determined that TOS was not related to Johnson's work. Thus, its second finding pertained only to the accepted condition, epicondylitis, the only claim-related condition that the Board had found to be fixed and stable

---

[22] See Joyce v. Dep't of Corr., 155 Wn.2d 306, 325, 119 P.3d 825 (2005).
[23] Hue, 127 Wn.2d at 92.

as of the date of its order. Because the parties did not contest that condition in the superior court, the court had no reason to include it in the special verdict form.

Second, the trial court's remand order would not usurp the Department's authority to determine benefits for accepted conditions.

The trial court judgment states,

> [T]he July 7, 2014 order of the Board of Industrial Insurance Appeals, is hereby reversed, and the claim is remanded to the Department of Labor and Industries with instructions to issue an order that directs the Self-Insured Employer, Liberty Mutual, to allow the claim of Thoracic Outlet Syndrome and pay medical expenses, time loss, and all other benefits associated with that condition, if any.

(Emphasis added.)

Liberty Mutual calls this "a blanket statement authorizing benefits" and asserts that it is inappropriate where the Department, which has original jurisdiction, has not addressed payment of medical benefits, time loss, or other benefits here. Liberty Mutual asserts that the trial court order thus did not "flow from" the jury's sole finding—that the Board was incorrect that Johnson's work activities did not proximately cause or aggravate TOS.

A trial court's conclusions of law must flow from its findings.[24] Neither the Board nor the trial court may consider matters that the Department has not yet considered.[25]

---

[24] Watson, 133 Wn. App. at 909.
[25] Lenk v. Dep't of Labor & Indus., 3 Wn. App. 977, 982, 478 P.2d 761 (1970).

The trial court's order here was not "a blanket statement authorizing benefits." Instead, it did exactly what Liberty Mutual asks: it required that the Department decide what treatment is reasonable and necessary and what time loss or other benefits are appropriate. Nothing in the judgment required the Department to order medical expenses, time loss, or other benefits until the Department determined those costs resulted from TOS.

Third, Liberty Mutual's challenges to the trial court's jury instructions other than instruction 14 lack merit.

Liberty Mutual contends that instruction 4, defining an occupational disease, misstates the law and misled the jury. We disagree.

As a preliminary matter, Liberty Mutual appears to base its argument on the instruction Johnson proposed. The trial court offered a different instruction to the jury. The trial court's instruction read,

An occupational disease is defined by statute as:

Any disease that arises naturally and proximately out of the employment.

A disease "arises naturally out of employment" if it came about as a matter of course as a natural consequence or incident of distinctive conditions of his or her particular employment. The work conditions need not be peculiar to, nor unique to, his worker's particular employment. The disease need not be common to the claimant's particular employment. The claimant need not demonstrate a logical relationship between the disease and the work.

This instruction properly stated the law. Contrary to Liberty Mutual's assertion, it expressly stated that the occupational disease must arise out of the

-10-

employment. And jury instruction 5 further explained that for a condition to be compensable under the Industrial Insurance Act, it must be proximately caused by work conditions. Instruction 5 also defined the proximate cause requirement.

These instructions are consistent with the statute as the Supreme Court interpreted it in Dennis v. Department of Labor & Industries.[26] As Johnson points out, these instructions allowed Liberty Mutual to argue that TOS did not "arise[ ] naturally out of employment." To that end, for example, Dr. Kremer testified that the type of clerical work Johnson did is not the type of activity that activates the scalene muscle and causes TOS.

Liberty Mutual's proposed instruction would note that the conditions must be more likely to develop as a result of work activities as opposed to any other work or nonwork activity. While this is an accurate statement,[27] the trial court did not abuse its discretion in declining to give it. As noted above, instructions 4 and 5 correctly described the legal standard. Instruction 6 further informed the jury that Johnson had the burden of showing by a preponderance of the evidence that the Board's application of that standard was incorrect.

Liberty Mutual also claims that instruction 4 misled the jury by stating that the "claimant need not demonstrate a logical relationship between the disease

---

[26] RCW 51.08.140 ("'Occupational disease' means such disease or infection as arises naturally and proximately out of employment under the mandatory or elective adoption provisions of this title."); Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 481, 745 P.2d 1295 (1987).

[27] Dennis, 109 Wn.2d at 481.

and work." This statement is consistent with the holding in <u>Dennis</u>.[28] And although it is potentially confusing standing alone, instructions 4 and 5, read together, adequately explained the proximate cause requirement to the jury.

Next, Liberty Mutual contends that instruction 13 improperly shifted the burden of proof from Johnson to Liberty Mutual. We disagree.

Instruction 13 did not, as Liberty Mutual states, instruct the jury to give "the benefit of the doubt" to Johnson and "disregard preexisting frailties and infirmities." Instead, the instruction accurately stated that a claimant "is to be taken as he or she is, with all his preexisting frailties and bodily infirmities."[29] It reminded the jury that the occupational disease must proximately cause the claimant's disability. Instruction 13 did not misstate the law.

Liberty Mutual further contends the trial court abused its discretion in giving instruction 13 because Johnson offered no evidence of aggravation of a preexisting condition. The instruction thus confused the issues and placed an unsupported theory before the jury. Liberty Mutual is incorrect: it presented expert testimony that Johnson complained of pain and tingling as early as 2003 and that if Johnson did have TOS, it was caused by a congenital condition and not employment. This evidence supports the theory underlying instruction 13 and justifies the trial court's decision to give it.

---

[28] <u>Dennis</u>, 109 Wn.2d at 479 (holding that a worker does not need to "demonstrate a 'logical relationship between the disease-based disability and the work'") (quoting <u>Dennis v. Dep't of Labor & Indus.</u>, 44 Wn. App. 423, 436, 722 P.2d 1317 (1986)).

[29] <u>See</u> <u>Dennis</u>, 109 Wn.2d at 471.

Liberty Mutual further contends that the trial court abused its discretion in declining to give two of Liberty Mutual's proposed instructions. Defendant's instruction 13 would have told the jury, "You are to determine the whether [sic] plaintiff was medically fixed and stable regarding any claim-related condition on or about the date that the Department of Labor and Industries closed the claim, which was July 17, 2013." Defendant's instruction 14 would have informed the jury that "[p]roper and necessary medical treatment is provided for an accepted condition under the Industrial Insurance Act until the worker reaches a state of 'maximum medical improvement.'" It also would have defined "maximum medical improvement."

As discussed above, the trial court did not err in omitting from the special verdict form the issue of whether "conditions proximately caused by [Johnson's] occupational disease were fixed and stable . . . as of July 17, 2013." For the same reasons, defendant's instructions 13 and 14 were unnecessary and would have caused needless confusion. The trial court did not abuse its discretion in declining to give them.

Finally, Johnson requests the fees and costs she incurred in responding to Liberty Mutual's appeal at the trial court level and in this court. Because we do not sustain Johnson's right to relief, we deny her request.[30]

---

[30] RCW 51.52.130; RAP 18.1.

-13-

Conclusion

Because the trial court committed prejudicial error in instructing the jury to liberally construe the Industrial Insurance Act when finding facts, we reverse the judgment of the trial court and remand for a new trial.

Leach, J.

WE CONCUR:

Spearman, J.                    Appelwick